(8 App. Div. 575)

MALONEY v. NORTHWESTERN MASONIC AID ASS'N.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

INSURANCE—WAIVER OF CONDITIONS.

A provision of a policy that it shall not take effect until payment of the first premium, and delivery of the policy while the insured is in good health, was not waived by the fact that the agent of the insurance company, during the last illness of the insured, and a few hours before his death, delivered the policy to a third person, who informed the agent that the insured was at home sick, but did not state the nature and extent of his illness, and at the request of the agent, but without authority from the insured, received the policy, and paid the premium, it appearing that but two days before the insured had sent a statement to the company that he was then in good health, and the agent having no reason to suspect from what was said at the time that the insured was dangerously ill.

Action by Margaret Maloney against the Northwestern Masonic Aid Association on a policy of insurance. A verdict was directed for defendant at the Erie circuit on September 24, 1895, and plaintiff moved for a new trial, on exceptions ordered to be heard at general term in the first instance. Denied.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

E. G. Mansfield, for plaintiff.
William L. Marcy, for defendant.

WARD, J. This action was brought to recover $2,000 and interest upon a policy of insurance issued by the defendant, a corporation transacting its business at Chicago, Ill., upon the life of the plaintiff's son, Simon Maloney. The policy was made payable, in case of the death of the son, to his mother, the plaintiff. Pursuant to the rules of the defendant, an application was made for this insurance by Simon Maloney to the defendant, dated the 26th of February, 1894, and in writing, which contained an agreement that all the statements made in the application were material, and were warranted to be true, and the application, including that agreement, was thereby made a

part of any certificate of membership or policy that might be issued pursuant thereto, and "that said certificate of membership or policy shall not take effect until the first bimonthly premium shall have been paid, and the said certificate of membership or policy shall be issued and delivered to me during my lifetime and in good health." The seventh clause of the application was as follows: "Q. Are you now in good health? A. Yes. Q. Have you usually had good health? A. Yes." Then the applicant was asked if he had, or ever had, a large number of diseases, all of which he answered in the negative, but none of the questions included the disease known as "typhoid fever." He was then asked: "Q. Have you now, or have you ever had, any disease, infirmities, weakness, ailment, or disability of any kind not hereinbefore mentioned? A. No." This application was forwarded to the defendant, and, there being some discrepancies in the statement in regard to the age of the applicant, on the 2d of March the secretary of the company, at Chicago, mailed a letter to Simon, in which it was stated that in the application he had given his birth as the 15th day of August, 1869, and his age at nearest birthday 24, and, if the date of his birth was correctly given, he would be 25 years of age instead; and he was asked, in order that there might be no doubt as to his age, to answer the questions given as to his birth, and the date thereof, and his age at nearest birthday, his age being material. At the close of this communication was the following statement, which appears to have been signed by Simon Maloney: He stated that his age was 25 at his nearest birthday, and proceeded: "I hereby expressly agree that the answers and statements made by me hereon, in reply to the foregoing questions, are full and true; and I agree that the same, together with my application for membership in the Northwestern Masonic Aid Association, shall constitute a warranty, and, if found untrue, the contract to be made with me by said association in accordance with said application shall be null and void. Signed by Simon Maloney, applicant, at Buffalo, New York, on the 14th day of March, 1894." It is not questioned in the case but what this letter was executed at the time it bears date, nor but what it was signed by the authority of Simon. The evidence is undisputed in the case to the effect that on the 2d of March, 1894, the assured, Simon, was taken sick with typhoid fever, was confined to his house, continued to grow worse, and on the 14th of March was dangerously ill from said disease, and died on the 16th day of March. He lived at home with the plaintiff, and was sick and died there. Lewis Newland, a witness for the plaintiff, who was a ticket broker in Buffalo, testified that Maloney was in his employ; that he did not see him from the time he was taken sick until after his death; that on the 16th of March, at about 9 o'clock in the morning, a Mr. Koch, who acted as agent, with certain prescribed powers, for the defendant, in Buffalo, came to witness' office, and asked if Mr. Maloney was in the office (meaning the assured). The witness said he was not. We quote: "That he was home, sick. Then he told me he had a policy for him. * * * He wanted to know if I would take it. I told him, 'Yes.' He wanted to know if I would pay the $4.50. I told him, 'Yes.'

That is the premium [the first bimonthly premium], and I took the policy, and put it away in the safe until it was called for." The witness stated that he owed Simon three or four dollars, salary, and advanced the money for the premium because Koch asked him for it. It does not appear that this witness had any authority from the assured to pay this premium and take the policy. The witness further stated that he did not know what was the matter with Simon; did not know that he had the typhoid fever; that he thought that it was some simple malady at the time he made the statement to Koch. Koch testified that he did deliver the policy, and accepted the premium, at the time and as stated by Newland, but that Newland made no statement in regard to the health or condition of Simon, or that he was sick at home, and he (Koch) had no knowledge at the time but what Simon was in perfect health. Simon died on the evening of the 16th of March. The complaint in this action originally was upon the policy, but upon the trial it was amended so as to allege that the provision in the policy that it should be delivered to the assured in his lifetime and in good health was waived. The defendant's answer alleged that the policy was not issued or delivered to Simon during his life, and while in good health, but that he was dangerously ill of typhoid fever, and was never, in fact, delivered to Simon.

The plaintiff seems to concede, as she must, that, unless she can stand upon the alleged waiver, she must fail. The act of waiver was not performed by the deceased. As we have seen, he died within a few hours after the policy was delivered to Newland, and had no knowledge of the facts of the delivery, upon which the alleged waiver is based, so far as the case discloses. So there was no ratification by the deceased of the acts of Newland, nor has there been any such ratification by any representative of the deceased, but a ratification is claimed by a stranger to the contract,— the beneficiary thereof, the plaintiff. It is an elementary principle that a party cannot ratify what he could not originally authorize. The beneficiary could not, during the lifetime of Simon, have authorized Newland to take the delivery of this policy, and pay the premium. Can she ratify it after the death of Simon? This is a serious question that meets the plaintiff upon the threshold; but, in view of other decisive questions in the case, it is not necessary to determine that question. Assuming that the agent Koch had the power to waive for the defendant, as claimed by the plaintiff, was there, under the circumstances of this case, a waiver upon which the plaintiff can stand. The policy provided that it should be delivered to the assured in his lifetime and in good health, and should not take effect until the first bimonthly payment was made. It was not delivered to the assured. He was dangerously ill when the policy was delivered to Newland. He did not make the first · bimonthly payment, and the plaintiff's whole case hinges upon what occurred with Newland, to which we have referred.

This leads us to the consideration of what a waiver is, and we find an excellent definition in Bishop on Contracts (Ed. 1887, § 792), as follows:

"Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right, or of his intention to rely upon it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards."

The waiver, then, must be made "with full knowledge of the material facts." It cannot be claimed that the agent Koch acted in the light of all the facts, or of the material facts. He was simply told that Maloney was sick at home. He was not told that he was dangerously sick; that he had a disease often fatal, and recognized as among the most dangerous of diseases; or that Simon had been dangerously ill and confined to his bed for two weeks. From what was said, the agent might well have inferred that it was a temporary ailment, and no wise affected his right under the policy, and such as people frequently have, which means nothing but a few days' attention at home. There was nothing in the statement to point to the death of Maloney, when he was at the point of death, and within a few hours of his death, and that the defendant might soon be called upon to pay $2,000 if it accepted the trivial sum of $4.50. If Newland was acting as the agent of the deceased, so that the plaintiff can avail herself of his acts, then he should have fully informed the agent of the truth, and not suppress the important fact of the real condition of the assured. It is true that he says that he did not know what his true condition was. If that were so, no amount of inquiry on the part of the agent, of Newland, would have elicited the fact.

"Waiver" belongs to the family of "estoppel," and often, in such cases, they are convertible terms. The waiver is a defense when the party insisting upon the contract has done something which in equity prevents the party from enforcing the contract, and, if permitted to do so, it would operate as a fraud upon the other party. Here, at least, there was a suppression of a most vital fact by the representative of the insured, from the insurer; and to permit an estoppel in such a case would operate as a gross fraud upon the insurer. The agent had no reason to suspect on the 16th that the deceased was dangerously ill, from what was said at that time, when but two days before he had been assured by a statement, in effect (that appeared to have been signed by the assured), that he was then in good health, and capable of performing his contract, receiving his policy, and paying the first premium, because he there affirms, under date of March 14th, in his letter, wherein he corrects his age, the statements as to his health, and his freedom from disease, which is made a warranty under the contract. The agent would naturally conclude from this statement on the 14th that the illness was not serious, and be diverted by such statement from making further inquiries. If it be claimed that there was no intentional suppression of the facts from the agent by Newland, and therefore no fraud was practiced upon the defendant, we then have a condition quite as fatal to the plaintiff's right to recover as if such fraud existed, because then the waiver was made in ignorance by both parties of the conditions which, if known, would have pre-

vented the delivery of the policy and the acceptance of the premium. Waiver is an equitable defense, as well as estoppel, and cannot be predicated upon a mistake of facts. It seems clear, therefore, that there was not a waiver, under the circumstances of this case, which will permit the plaintiff to recover.

The defendant contends that the agent had no power to bind the company by the assumed waiver. In view of the conclusions reached upon the other questions, it is, perhaps, unnecessary to consider this question at length. The extent and the limitations of this agent's authority to act for the defendant clearly appear in the evidence, and we fail to discover any such authority. The agent had power to deliver policies and collect premiums in cases where the condition imposed upon the assured by the contract had not been violated. He could only deliver a policy to an assured in health, and he could only take a premium from a person fulfilling those conditions. He could no more deliver a policy to a man stricken with a fatal disease, and at the point of death, and take a premium from him, that would bind the company as a waiver, than he could to the personal representatives of a deceased. In no aspect of this case can the plaintiff recover.

The motion for a new trial should be denied, with costs, and judgment entered upon the verdict in favor of the defendant. All concur.