FILED

05/31/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0224

DA 21-0224

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 103

NORTH STAR DEVELOPMENT, LLC,

      Petitioner and Appellant,

  v.

MONTANA PUBLIC SERVICE COMMISSION

      Respondent and Appellee,

  and

MONTANA CONSUMER COUNSEL,

      Respondent, Intervenor, and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV-2020-1703
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jonathan Motl, Thomas Schoenleben, Bitterroot Law, Hamilton, Montana

      For Appellees:

          Ben Reed, Lucas Hamilton, Aimee Hawkaluk, Montana Public
Service Commission, Helena, Montana

          Jason Brown, Robert Nelson, Montana Consumer Counsel, Helena,
Montana

Submitted on Briefs:  November 10, 2021

Decided:  May 31, 2022

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 North Star Development, LLC (North Star) appeals the March 2021 judgment of the Montana First Judicial District Court, Lewis and Clark County, dismissing its petition for judicial review of the August 2020 rate determination of the Montana Public Service Commission (PSC) regarding North Star's 2019 application for water and sewer utility rate increase authorizations.[1] We address the following restated issues:

1. *Whether the District Court erroneously dismissed North Star's petition for judicial review due to failure to exhaust administrative remedies without considering the asserted futility of doing so?*

2. *Whether the District Court erroneously dismissed North Star's petition without considering its assertions that waiver or equitable estoppel precluded PSC assertion of failure to exhaust administrative remedies?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 North Star is a small, privately owned public water and sewer service utility, as defined by § 69-3-101, MCA, subject to PSC regulation under Title 69, chapter 3, MCA.[2] North Star owns and operates potable water and wastewater facilities and provides water

---

[1] *See* Final Order No. 7105f, PSC Docket 2010.06.060.

[2] The PSC is a five-member executive branch agency, §§ 2-15-2601, -2602, 69-1-101, -102, and -103, MCA, vested with rule-making authority, §§ 69-1-110(3) and 69-3-103, MCA, and charged with "full power of supervision, regulation, and control of . . . public utilities" in accordance with the provisions of Title 69, chapter 3, MCA. Sections 69-3-101, -102, -106, and -110, MCA. As pertinent here, the PSC's regulatory duty includes, *inter alia*, regulating public utilities to ensure that their customer service rates and charges are "reasonable and just." *See* § 69-3-201 and Title 69, chapter 3, part 3, MCA. *See also* Admin. R. M. Title 38, chapter 5, subchapter 25 (PSC regulation of privately owned water utilities).

3

and sewer services to approximately 270 customers in the North Star subdivision in or about Helena, Montana.

¶3 Starting with its initial August 2010 rate determination on North Star's June 2010 rate application, the PSC has repeatedly determined and adjusted the monthly rates that North Star may charge its customers for water and sewer services in its service area. On January 23, 2019, North Star applied pursuant to Admin. R. M. 38.5.101, et seq., for PSC authorization for specified water and sewer rate increases.[3] On March 25, 2019, North Star filed an amended water and sewer services rate increases application based on a new or previously unsubmitted professional engineering report which indicated higher water and sewer infrastructure costs (mainly in the form of a claimed $5,810,422 gross utility plant value adjusted up from $1,211,762), thus resulting in significantly higher requested rate increases.[4]

¶4 Upon preliminary review pursuant to Admin. R. M. 38.5.184 (1977), the PSC rejected North Star's amended rate application on the stated ground that it did not conform to the minimum PSC rate case filing standards specified in Admin. R. M. 38.5.101 through 38.5.184 (1977-93). Within the specified PSC deadline, North Star timely filed supplemental testimony and documentation in support of its amended application on

---

[3] The application requested authorization for a base water service rate of $41 per month, plus $5 per 1,000 gallons over 20,000 gallons per month, and a flat sewer service rate of $30.55 per month.

[4] The amended application requested authorization for a base water service rate of $124.02 per month (up from the originally requested $41 per month), plus $5 per 1,000 gallons over 20,000 gallons per month, and a flat sewer service rate of $76.89 per month (up from the originally requested $30.55 per month).

June 21, 2019. Upon review, the PSC accepted North Star's amended rate increase application for consideration on the merits.[5]

¶5 After granting intervention to the Montana Consumer Counsel[6] and one or more North Star customers, the PSC conducted a noticed public hearing on the merits of North Star's amended application on January 29-30, 2020. Upon the close of post-hearing briefing on March 27, 2020, the PSC subsequently deliberated on the amended rate increase application in an agenda-noticed work session at its regularly scheduled business meeting on August 11, 2020. At the end of the work session, the PSC issued a 41-page "Final Order" that included: (1) disposition of a disputed evidentiary issue regarding Admin. R. M. 38.5.2532 (2014);[7] (2) findings of fact pertinent to applicable PSC "ratemaking principles"; (3) resulting conclusions and applications of law; and (4) an order authorizing:

---

[5] North Star supported its amended application with, *inter alia*, written testimony of its rate consultant, a former PSC rate-analyst (Leroy Beeby), and various analytical spreadsheets indicating a claimed "utility plant in service" value adjusted up in accordance with the originally unsubmitted engineering report. Pursuant to §§ 69-1-102, 69-3-201, -109, and -324, MCA, the PSC "may, in its discretion, investigate and ascertain the value of the property of each public utility actually used and useful for the convenience of the public" in order to determine a utility's "fair and reasonable rate of return." *See Mountain States Tel. & Tel. Co. v. Dep't of Pub. Serv. Regulation*, 191 Mont. 331, 334, 624 P.2d 481, 482-83 (1981). *See also* Admin. R. M. 38.5.123, 146, and 182 (1977). The "utility plant in service" value was thus an essential component of North Star's "rate base" calculation, and in turn, the claimed "investment on which returns are allowed" for purposes of regulated rate determination. *See In re Montana Power Co.*, 180 Mont. 385, 398-401, 590 P.2d 1140, 1148-49 (1979); Admin. R. M. 38.5.123 and 128 (1977).

[6] The office of Consumer Counsel is a constitutionally-created entity charged with "the duty of representing consumer interests in hearings before the [PSC]." Mont. Const. art. XIII, § 2.

[7] Admin. R. M. 38.5.2532 (2014) provides that "[w]hen a small water or sewer utility that has been built in connection with a subdivision . . . file[s] a rate application . . . , there is a rebuttable presumption that the value of original utility plant and assets ha[ve] [already] been recovered in the sale of [the] lots in [the] development to be served by the . . . utility." The PSC determined that it need not apply the presumption because the record indicated that North Star had already recovered the value of its original utility plant and assets.

5

a total [North Star] revenue requirement of $232,201.29, of which, after adjustments for revenues related to volumetric charges, wholesale charges, and ancillary charges, $182,543.27 . . . [North Star may] collect[] through fixed charges to customers at a monthly combined water/sewer rate of $55.93 . . . [as] summarize[d] [in the attached] Exhibit B.

(Emphasis omitted from order caption.)[8]

¶6 North Star thereafter made no further filing with the PSC. It instead filed a district court petition on October 2, 2020, for judicial review of the 2020 PSC rate determination pursuant to § 2-4-702, MCA (Montana Administrative Procedure Act (MAPA) provision for judicial review of final written contested case agency decisions). By motion filed October 23, 2020, the PSC moved for dismissal of the petition pursuant to M. R. Civ. P. 12(b); § 2-4-702(1)(a), MCA; and *Flowers v. Bd. of Personnel Appeals, Mont. Dep't of Fish, Wildlife & Parks*, 2020 MT 150, ¶ 8, 400 Mont. 238, 465 P.3d 210, on the asserted ground that North Star failed to exhaust all available administrative remedies, namely Admin. R. M. 38.2.4806(6) (2016) (PSC orders are "final for purpose of appeal upon the entry of a ruling on a motion for reconsideration" or after "20 days following the filing" date of such motion).[9] The PSC further asserted in support of its motion that North Star's failure to exhaust the subject remedy did not fall within any recognized exception to the exhaustion of administrative remedies requirement. Citing *Mountain Water Co. v. Mont.*

---

[8] The PSC unanimously signed and dated the "Final Order" on August 11, 2020, but did not serve it on North Star until September 8, 2020. See, e.g., North Star's Amended Complaint, Cause No. ADV-2020-1703, Montana First Judicial District Court, Lewis and Clark County.

[9] All references hereinafter to Admin. R. M. 38.2.4806 are to the currently-effective 2016 version of the rule.

6

*Dep't of Pub. Serv. Reg.* (*Mountain Water-PSC)*, 2005 MT 84, ¶ 18, 326 Mont. 416, 110 P.3d 20, and *Art v. Mont. Dep't of Labor and Industry ex rel. Mason*, 2002 MT 327, ¶ 17, 313 Mont. 197, 60 P.3d 958, the PSC asserted that North Star's failure to exhaust administrative remedies precluded district court subject matter jurisdiction over the matter.

¶7 On November 12, 2020, instead of responding to the PSC's motion to dismiss, North Star filed an amended "complaint" pursuant to M. R. Civ. P. 15(a)(1)(B)[10] which asserted, *inter alia*, that it "anticipates that the PSC will assert, through a motion, that the [2020 rate determination order] is not a final written decision" and thus not procedurally ripe for judicial review.[11] The amended complaint further averred, however, that the equitable doctrines of waiver, estoppel, and "unclean hands" precluded the PSC from asserting that the petition was not ripe for judicial review because: (1) the PSC captioned the subject 2020 rate determination order as a "Final Order"; (2) North Star reasonably relied on the caption of the order in concluding that it was in fact the PSC's final order and thus ripe for review without further administrative process; and (3) any "further administrative consideration" would be futile.[12] In support of its futility assertion, the amended complaint

---

[10] Further complicating matters procedurally, North Star concurrently filed a separate "Supplemental Motion to Amend Complaint" for leave of court to file its concurrently-filed amended complaint pursuant to M. R. Civ. P. 15(a)(2) "if necessary" in the event the District Court may find its Rule 15(a)(1)(B) amendment "as a matter of course" improper.

[11] The PSC had in fact already filed a motion and with that asserted ground for dismissal 20 days earlier.

[12] Though not at issue on appeal here, the amended complaint further alleged that the PSC had "unclean hands" because the captioned "Final Order" included no qualifying notice or warning that it was not ripe for judicial review absent a timely request for reconsideration and because it was the result of the PSC's own "unpublished procedural and substantive guidelines," rather than a "contested case hearing . . . under the contested case directives of MAPA."

asserted that the PSC was not likely to reconsider because it had already "fully adjudicated this [m]atter" upon contested case hearing, extensive post-hearing briefing, and a 36-page PSC staff memorandum, and that North Star had nothing further to add other than repetition of its prior assertions. The amended complaint further asserted, *inter alia*, that the August 2020 rate determination order was void ab initio due to the PSC's failure to timely issue a final contested case agency decision within 90 days after the case was fully submitted on North Star's final post-hearing reply brief on March 27, 2020.

¶8 North Star concurrently filed a separate brief in opposition to the PSC's motion to dismiss, essentially asserting that its intervening filing of its amended complaint mooted the PSC motion to dismiss its original petition, thus requiring the PSC to file a new motion to dismiss addressing the amended complaint. Acquiescing to North Star's procedural maneuvering, the PSC filed a "Renewed Motion to Dismiss" on December 28, 2020, which again asserted that North Star failed to exhaust administrative remedies.[13] The PSC's supporting brief also refuted North Star's amended complaint assertion that the 2020 rate determination order was void ab initio in violation of the 90-day deadline specified by § 2-4-623(1)(a), MCA.

¶9 On January 11, 2021, without citation to enabling procedural authority, North Star filed a "Motion to Void" the August 2020 rate determination on the asserted ground that it

---

[13] Attached as exhibits to the motion were two emails manifesting an August 10, 2020 exchange in which the PSC's counsel advised North Star's counsel that the PSC would not issue a proposed final order before issuing its forthcoming final order and that Admin. R. M. 38.2.4806 was thus "the relevant rule for exhaustion" of administrative remedies.

was void ab initio due to the PSC's failure to timely issue a final contested case agency decision within 90 days of submission for decision as required by § 2-4-623(1)(a), MCA. Attached as referenced exhibits to the motion were the subject PSC order, a transcript of the January 2020 contested case hearing, and North Star's post-hearing reply brief filed March 27, 2020. North Star also concurrently filed a separate motion pursuant to M. R. Civ. P. 12(b) for conversion of the PSC's renewed motion to dismiss, and North Star's motion to void the August 2020 PSC rate determination order, to cross-motions for summary judgment on the asserted ground that those motions "ask the [c]ourt to look beyond the [c]omplaint by attachment of documentary exhibits presenting facts outside of the facts stated in [North Star's] [amended] complaint."

¶10 In addressing the resulting procedural tangle, the District Court first noted that Admin. R. M. 38.2.4806(1) and (6) prescribe a motion for reconsideration as the final administrative remedy available in contested case PSC proceedings. The court concluded that Admin. R. M. 38.2.4806(6) explicitly provides that a final contested case PSC order or decision is not ripe for judicial review under § 2-4-702, MCA, unless and until the aggrieved party files a motion for reconsideration and the PSC timely issues a ruling on the motion within 20 days or, alternatively, 20 days have passed without issuance of a PSC ruling, whichever occurs first. Noting that North Star did not dispute that it did not file a motion for reconsideration, the District Court concluded as a matter of law that North Star failed to exhaust all available administrative remedies and that the court thus lacked subject matter jurisdiction under § 2-4-702, MCA, to consider North Star's petition for judicial

9

review.[14]  The District Court therefore dismissed North Star's petition pursuant to M. R. Civ. P. 12(h)(3) (dismissal upon determination of lack of subject matter jurisdiction).  The court's written ruling did not address North Star's assertion of futility as an exception to the exhaustion of administrative remedies requirement.  In the wake of its threshold jurisdictional ruling, the court expressly declined to address North Star's motion to void the subject PSC order and related motion for conversion of that motion to a motion for summary judgment.  North Star timely appeals.

## STANDARD OF REVIEW

¶11     A district court's conclusions as to whether it had subject matter jurisdiction to adjudicate a particular claim or controversy, and whether the subject claim or controversy was a justiciable controversy, are questions of law reviewed de novo for correctness. *Gottlob v. DesRosier*, 2020 MT 210, ¶ 5, 401 Mont. 50, 470 P.3d 188; *Stowe v. Big Sky Vacation Rentals, Inc.*, 2019 MT 288, ¶ 12, 398 Mont. 91, 434 P.3d 655; *Reichert v. State*, 2012 MT 111, ¶ 20, 365 Mont. 92, 278 P.3d 455.  Whether an aggrieved party failed to exhaust administrative remedies as required by § 2-4-702(1)(a), MCA, is a mixed question of fact and law which we review de novo for correctness. *See Flowers*, ¶ 6.

## DISCUSSION

¶12     1. *Whether the District Court erroneously dismissed North Star's petition for judicial review due to failure to exhaust administrative remedies without considering the asserted futility of doing so?*

---

[14] In regard to North Star's Rule 12 motion for conversion of the PSC's motion to dismiss to a Rule 56 motion for summary judgment, the court concluded that conversion was not necessary because North Star did not dispute that it did not file a motion for PSC reconsideration of the subject rate determination order.

¶13 As a procedural condition precedent to judicial review of a "contested case" "final [agency] decision," the aggrieved party must generally first "exhaust[] *all* administrative remedies available within the agency." Section 2-4-702(1)(a), MCA (emphasis added). An aggrieved party is thus "not entitled to judicial [review]" of a contested case final agency decision "until the prescribed administrative remedy has been exhausted." *Flowers*, ¶ 8 (construing § 2-4-702(1)(a), MCA—internal citations omitted). The manifest purpose of the exhaustion requirement is to afford the involved agency an opportunity to "correct its own errors . . . before a court interferes." *Bitterroot River Prot. Ass'n v. Bitterroot Conservation Dist.*, 2002 MT 66, ¶ 22, 309 Mont. 207, 45 P.3d 24. The exhaustion of administrative remedies requirement applies equally to the ultimate case decision, constituent or related issues adjudicated therein or thereby, as well as any other related issue that could "have been [timely] raised" and "adjudicated [by the agency] pursuant to the [available] administrative process." *Flowers*, ¶ 8 (internal citation omitted); *Art*, ¶ 14 (§ 2-4-702, MCA, "requires exhaustion of administrative remedies in adjudicating particular issues as well as entire cases"); *Marble v. Mont. Dep't of Health & Human Servs.*, 2000 MT 240, ¶¶ 27-29, 301 Mont. 373, 9 P.3d 617 (holding that subject issue which "was never properly raised, argued, or adjudicated pursuant to the administrative process" "must first be challenged at the administrative level" before resort to judicial review under § 2-4-702, MCA).

¶14 For purposes of MAPA, a "contested case" is a matter or "proceeding" in regard to which the governing law requires an "agency," as defined by § 2-4-102(2), MCA, to make

"a determination of legal rights, duties, or privileges of a party" upon notice and "opportunity for hearing." Section 2-4-102(4), MCA. As pertinent here, a MAPA "contested case" includes, *inter alia*, "ratemaking" as applicable to the regulatory authority of a particular agency. Section 2-4-102(4), MCA. Upon a contested case hearing in accordance with §§ 2-4-601 and -611 through -623, MCA, the agency must issue and serve by mail a "*final* decision or order" that includes, *inter alia*, "separately stated" supporting findings of material fact, conclusions of law, and the subject agency determination of rights, duties, or privileges at issue. Section 2-4-623, MCA (emphasis added). *See also* § 2-4-102(4), MCA. Upon "exhaust[ion] [of] all administrative remedies available within the agency," an aggrieved party "is [then] entitled to [petition for] judicial review" under the provisions of Title 2, chapter 4, MCA. Section 2-4-702(1)(a), MCA.

¶15 Within the framework of MAPA and the PSC's regulatory authority under Title 69, MCA, the PSC must "adopt . . . rules of practice and procedure for the filing, investigation, and hearing of petitions or applications to increase or decrease [the] rates and charges" of various specified regulated entities and public utilities "as the commission finds necessary or appropriate to enable it to reach a final decision in an orderly manner." Section 69-2-101, MCA. *See also* § 69-3-103(2)(b), MCA (supplemental PSC rulemaking power and authority to "adopt and publish reasonable and proper rules to govern its proceedings" in the regulation of public utilities). Pursuant to its rulemaking authority, the PSC has expressly provided for reconsideration of final contested case PSC decisions, to wit:

> Within ten days after an order or decision has been made by the [PSC], any party may apply for a reconsideration in respect to any matter determined therein. Such motion shall set forth specifically the ground or grounds on

12

which the movant considers said order or decision to be unlawful, unjust, or unreasonable. . . . If, after such motion for reconsideration is filed, the [PSC] is of the opinion that the original order or decision is in any respect unjust or unwarranted, or should be changed, the commission may abrogate, change, or modify the same. . . . A motion for reconsideration shall be deemed denied when it has not been acted upon within 20 days of its filing. . . . A [PSC] *order is final for purpose of appeal* upon the entry of a ruling on a motion for reconsideration, or upon the passage of 20 days following the filing of such a motion, whichever event occurs first.

Admin. R. M. 38.2.4806(1), (3), (5), and (6) (emphasis added). Aside from two limited exceptions not applicable here,[15] exhaustion of a motion for reconsideration is thus a mandatory prerequisite for exhaustion of available administrative remedies before a final PSC contested case decision or order is ripe for judicial review. *See* Admin. R. M. 38.2.4806(6). *See also* § 2-4-702(1)(a), MCA.

¶16 We have recognized various narrow jurisprudential exceptions to the general exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA. The exhaustion of remedies requirement does not apply to "bona fide" claims for declaratory judgment that the subject administrative process, requirement, or rule is itself unconstitutional and no other "effective relief" remains available to the challenging party under the administrative process. *Flowers*, ¶ 15 (internal citations omitted). Moreover, further exhaustion of administrative remedies may not be necessary where the aggrieved party makes a supported showing that the subject final agency decision or order is based on application of an unconstitutional or fundamentally erroneous principle of law, the

---

[15] *See* Admin. R. M. 38.2.4806(7)-(8) (protective order and timely injunction/suspension application exceptions).

challenge of which is neither dependent on, nor otherwise involves, an agency factual determination or exercise of discretion. *See Shoemaker v. Denke,* 2004 MT 11, ¶¶ 20-26, 319 Mont. 238, 84 P.3d 4 (holding that exhaustion of remedies requirement applied where asserted constitutional defect challenged both findings of fact and questions of law and challenging party was therefore required to "argue both his factual issue and his constitutional issue before the [subject agency]"—internal citations omitted); *Taylor v. Mont. Dep't of Fish, Wildlife & Parks*, 205 Mont. 85, 92-94, 666 P.2d 1228, 1231-32 (1983) (exhaustion of administrative remedies requirement not applicable following adverse Human Rights Commission agency determination where claimant petitioned court for declaratory judgment, not judicial review, voiding FWP's forced retirement of claimant based on pure conflict of law between mandatory retirement statute and equal protection/anti-age-discrimination statute).

¶17    Here, as a threshold matter, North Star did not petition for declaratory judgment as distinct from a petition for judicial review. Nor did it petition for judicial review regarding a pure issue of law procedurally preserved for judicial review. In that regard, we will affirm a correct legal result even if based on a wrong or unspecified reason. *Bitterrooters for Planning, Inc. v. Mont. Dep't of Envtl. Quality*, 2017 MT 222, ¶ 44, 388 Mont. 453, 401 P.3d 712 (internal citation omitted). Taking North Star's amended complaint assertion that the PSC's 2020 rate determination was void ab initio, due to non-compliance with the 90-day deadline specified by § 2-4-623(1)(a), MCA, as an issue of law not dependent on adjudication of material facts or exercise of PSC discretion, MAPA expressly provides that, except for a challenge of "the validity of a [particular] statute" under which the party

14

proceeded before the agency, a "party may not raise" on judicial review "any other question not raised before the agency unless it is shown to the satisfaction of the court that there was good cause for failure to raise the question before the agency." Section 2-4-702(1)(b), MCA. Here, North Star asserted its void-for-violation of § 2-4-623(1)(a), MCA, attack on the 2020 rate determination by way of petition for judicial review under § 2-4-702, MCA. The asserted issue did not involve an asserted constitutional or other pure issue of law regarding the validity of any particular statute under which North Star proceeded before the PSC. Whether by prior motion after expiration of the 90-day deadline or upon post-decision motion for reconsideration, North Star had ample opportunity to challenge the PSC's procedural compliance with § 2-4-623(1)(a), MCA, before resorting to petition for judicial review, but inexplicably did not. Nor did it make any assertion or showing to the District Court, or even here, of any inability to timely raise that issue before the PSC. Section 2-4-702(1)(b), MCA, and the exhaustion of remedies requirement of § 2-4-702(1)(a), MCA, thus precluded North Star from later raising its assertion of PSC non-compliance with § 2-4-623(1)(a), MCA, on petition for judicial review. *See also Hilands Golf Club v. Ashmore*, 2002 MT 8, ¶ 21, 308 Mont. 111, 39 P.3d 697 (procedural limitation of § 2-4-702(1)(b), MCA, renders "general rule that justiciability questions can be raised at any time . . . not applicable" to challenges to administrative proceedings not previously raised before the agency). North Star's assertion of procedural error in violation of § 2-4-623(1)(a), MCA, therefore did not fall within the narrow jurisprudential exception to the requirement for exhaustion of administrative remedies regarding constitutional or other pure issues of law.

15

¶18    Nor is exhaustion of remaining administrative remedies necessary under § 2-4-702(1)(a), MCA, when the subject remedy at issue would be futile *as a matter of law*. *Mountain Water-PSC*, ¶¶ 15-16 (citing *DeVoe v. Mont. Dep't of Revenue*, 263 Mont. 100, 866 P.2d 228 (1993)).  In *DeVoe*, for example, the Montana Department of Revenue asserted that the exhaustion of administrative remedies requirement precluded a taxpayer from asserting on judicial review that the State Tax Appeal Board (STAB) erroneously failed to apply the correct appraised value to the subject properties for subsequent tax years because the sole matter at issue before STAB was the proper appraised value for tax year 1986.  *DeVoe*, 263 Mont. at 114, 866 P.2d at 237.  We held, however, that the exhaustion of administrative remedies requirement did not apply because it would have been futile as a matter of law given that the governing administrative rule (1) precluded the taxpayer from further administrative appeal of the appraised value of the subject properties in the same multi-year appraisal cycle, and (2) further provided that the correct value determined by the agency for the subject year on appeal thereafter applied to the remaining years in that appraisal cycle.  *DeVoe*, 263 Mont. at 115, 866 P.2d at 237-38.  In contrast to the narrow circumstance where an available administrative remedy would in any event be futile as a matter of law, the mere possibility or likelihood that an administrative remedy may not succeed is insufficient to render it futile as a matter of law.  *See Mountain Water-PSC*, ¶¶ 16-18 (noting that subject administrative agencies had the "authority and . . . ability" to provide the subject relief and holding that mere "speculation" of failure was insufficient to render the established administrative processes futile as a matter of law).  *Accord Hathaway v. Zoots Enters.*, 2021 MT 292, ¶ 23, 406 Mont. 239, 498 P.3d 204 ("the

16

likelihood of . . . denial" of an administrative appeal did not "raise such futility as to render the requirement a legal absurdity"—exhaustion requirement would mean nothing "if all an employee had to do to was argue that the higher-ups would probably affirm the firing," thus rendering the administrative process "trivially easy . . . to evade"); *Russell v. Masonic Home of Mont., Inc.*, 2006 MT 286, ¶¶ 15-17, 344 Mont. 351, 147 P.3d 216 (exhaustion of remedies not "futile" based on employee "speculation" that, per internal administrative grievance policy, "the person responsible for [the alleged] wrongful discharge" may issue an adverse final decision"—citing *Mountain Water-PSC*).

¶19    Here, North Star essentially asserted below only that, given the extensive contested case process and consideration that had already occurred, the PSC would not likely have reconsidered the merits of its comprehensive final decision had North Star pursued that remedy under Admin. R. M. 38.2.4806.  North Star made no showing, however, that the PSC was precluded as a matter of law from reconsidering North Star's arguments and reaching a more favorable result, if so persuaded and inclined.  Accordingly, we conclude that North Star failed to demonstrate that exhaustion of its final administrative remedy—a motion for PSC reconsideration of the subject PSC rate determination order—would have been futile as a matter of law.[16]  It is unclear why the District Court did not address North Star's assertion of the futility exception, but we will nonetheless affirm a correct result even if based on a wrong or unspecified reason.  *Bitterrooters*, ¶ 44.  We thus hold the

---

[16] We will thus not address North Star's alternative assertion of entitlement to judicial review under § 2-4-701, MCA (rendering preliminary agency decisions "immediately reviewable" if final review "would not provide an adequate remedy").

17

District Court correctly concluded that North Star failed to exhaust all available administrative remedies as required by § 2-4-702(1)(a), MCA.

¶20 The District Court further concluded that North Star's failure to exhaust administrative remedies deprived it of subject matter jurisdiction to consider the merits of North Star's amended petition for judicial review. Preliminarily, the court's jurisdictional conclusion is consistent with prior decisions wherein we have similarly held, albeit in passing without analysis, that district courts correctly concluded that failure to exhaust available administrative remedies deprived them of subject matter jurisdiction for judicial review of final agency decisions. *See, e.g.*, *Flowers*, ¶¶ 6, 12, and 17; *Mountain Water-PSC*, ¶ 18; *Art*, ¶¶ 17-18; *Gilpin v. State*, 249 Mont. 37, 39, 812 P.2d 1265, 1267 (1991); *Hedden-Empire Ltd. P'ship v. Mont. Dep't of Revenue*, 243 Mont. 206, 208-10, 793 P.2d 828, 829-30 (1990). However, by reference to controversies that are "ripe" or unripe for judicial review, other decisions have effectively recognized that the failure to exhaust administrative remedies simply rendered the case or controversy non-justiciable, rather than in excess of a court's subject matter jurisdiction. *See Flowers*, ¶ 8 (case is not "ripe for judicial review" until "each individual issue [has] been properly raised, argued, or adjudicated pursuant to the [available] administrative process"); *Marble* ¶¶ 27-29 (subject issue "never properly raised, argued, or adjudicated pursuant to the administrative process," was therefore "never ripe for judicial review," and thus "there was no 'final decision' upon which . . . [c]ourt could assume jurisdiction"). *See also Qwest Corp. v. Mont. Dep't of Pub. Serv. Reg.*, 2007 MT 350, ¶ 19, 340 Mont. 309, 174 P.3d 496 ("ripeness doctrine" as applied to exhaustion of administrative remedies requirement is

18

grounded in constitutional and jurisprudential principles and prevents courts from "premature . . . entangl[ement] . . . in abstract disagreements over [regulatory] policies" and protect agencies "from judicial interference until an administrative decision has been formalized"—discussing exhaustion in context of § 2-4-701, MCA (rendering preliminary agency decisions "immediately reviewable" if final review "would not provide an adequate remedy")); *Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 993 (Nev. 2007) (noting prior holdings that "failure to exhaust administrative remedies deprives the district court of subject-matter jurisdiction" but more recently recognizing "that failure to exhaust all available administrative remedies . . . [merely] renders the matter unripe" for judicial review—internal citation omitted).

¶21　　Subject matter jurisdiction and justiciability are related matters subject to review at any time, whether raised by the parties or *sua sponte* by the court. *Gottlob*, ¶ 7 ("[s]ubject matter jurisdiction is subject to challenge or review at any time on motion, or *sua sponte* by the court"—internal citations omitted); *State v. Whalen*, 2013 MT 26, ¶ 40, 368 Mont. 354, 295 P.3d 1055 (noting that "existence of a justiciable controversy is a threshold requirement to a court's adjudication of a dispute" and thus declining to review subject claim where "no justiciable controversy exist[ed]"); *Hilands*, ¶¶ 16 and 21 (noting general rule that justiciability can be raised at any time—internal citations omitted); *In re Marriage of Miller*, 259 Mont. 424, 426-27, 856 P.2d 1378, 1380 (1993) ("subject matter jurisdiction may be raised at any stage of a judicial proceeding by a party or *sua sponte* by the court"); *Barber v. Widnall*, 78 F.3d 1419, 1422 (9th Cir. 1996) (appellate court "may consider the issue of justiciability at any time because it is a prudential aspect of the [constitutional]

19

'case and controversy' prerequisite for [exercise of] federal court jurisdiction"). Because our prior cases have not clearly distinguished between the two in this context, we take this opportunity to clarify the effect of failure to exhaust administrative remedies on subject matter jurisdiction and justiciability.

¶22    "Subject matter jurisdiction is the threshold power of a court to consider and adjudicate particular types of cases and controversies." *Larson v. Stapleton ex rel. State*, 2019 MT 28, ¶ 17, 394 Mont. 167, 434 P.3d 241 (internal citations omitted). *Accord Gottlob*, ¶ 7 (internal citations omitted); *Stanley v. Lemire*, 2006 MT 304, ¶ 30, 334 Mont. 489, 148 P.3d 643 (internal citations omitted). "The subject matter jurisdiction of Montana district courts derives exclusively from Article VII, Section 4, of the Montana Constitution (district court subject matter jurisdiction over 'all civil matters and cases' arising at law or in equity) and conforming statutes." *Larson*, ¶ 17 (internal citations omitted). In contrast, "[j]usticiability is a related, multi-faceted question of whether the exercise of preexisting subject matter jurisdiction is appropriate under the circumstances in a given case based on the constitutional 'case' and separation of powers provisions of Article III, Section 1, and Article VII, Section 4, of the Montana Constitution and related prudential policy limit[ations]." *Larson*, ¶¶ 18 and 39 (internal citations omitted). Among other distinct legal considerations, justiciability includes consideration of whether a particular claim is procedurally ripe for adjudication under the circumstances. *Larson*, ¶ 18 (citations omitted); *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 18, 333 Mont. 331, 142 P.3d 864 ("a case may be non-justiciable because it presents an issue that is not ripe for judicial determination"). Accordingly, the existence of subject matter jurisdiction does

20

not depend upon the justiciability of a claim, but "justiciability is a mandatory prerequisite to the initial and continued *exercise* of [subject matter] jurisdiction." *Larson*, ¶ 18 (internal citations omitted—emphasis added). *See also Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶¶ 14-16, 340 Mont. 56, 172 P.3d 1232 (distinguishing subject matter jurisdiction from standing). Whether a claim is justiciable is thus a distinct question of law secondary to and apart from whether the subject court has subject matter jurisdiction to adjudicate that type of claim. *See Larson*, ¶¶ 16 and 18; *Ballas*, ¶¶ 14-16. *See also Larson*, ¶¶ 17-19 (distinguishing between subject matter jurisdiction, justiciability, and whether a complaint states a cognizable claim upon which relief may be granted).

¶23    Applied here, Article VII, Section 4(2), of the Montana Constitution authorizes the Legislature to "provide for direct [district court] review . . . of decisions of administrative agencies." As an implementation of that legislative authority, MAPA provides, *inter alia*, for district court jurisdiction for review of contested case agency decisions not otherwise provided for and creates a statutory cause of action for that purpose, but precludes exercise of that jurisdiction, and thus availability of that cause of action, until after the agency issues a final contested case decision *and* the aggrieved party has "exhausted all administrative remedies available within the agency." *See* §§ 2-4-101(2)(b), -102(4), and -702(1), MCA; *Hilands*, ¶¶ 18 and 21 (recognizing that district court "jurisdiction to review administrative decisions is statutorily created" and that § 2-4-702(1)(b), MCA, is "a limitation on the district court's jurisdiction to review administrative decisions . . . in contrast to" the broad

21

subject matter jurisdiction provided by Mont. Const. art. VII, § 4).[17] Within that framework, the exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, is an express procedural prerequisite for *exercise* of district court subject matter jurisdiction under § 2-4-702(1), MCA, and thus a procedural justiciability requirement that generally must be satisfied before a final contested case agency decision is ripe for judicial review under § 2-4-702(1), MCA. While the distinction is subtle, failure to exhaust administrative remedies as required by § 2-4-702(1)(a), MCA, does not deprive a district court of the subject matter jurisdiction provided by § 2-4-702(1), MCA, i.e., the power to adjudicate that type of case or controversy. Section 2-4-702(1)(a), MCA, rather precludes *exercise* of that jurisdiction until all available administrative remedies have been exhausted. Thus, the correct jurisdictional basis for dismissal of a petition for judicial review due to failure to exhaust administrative remedies is lack of procedural justiciability rather than lack of subject matter jurisdiction.

¶24     2. *Whether the District Court erroneously dismissed North Star's petition without considering its assertions that waiver or equitable estoppel precluded PSC assertion of failure to exhaust administrative remedies?*

¶25     North Star asserted for the first time in its amended petition for judicial review that the PSC implicitly waived or was equitably estopped from asserting that its 2020 rate determination order was not procedurally ripe for judicial review due to failure to exhaust administrative remedies. As a matter of law, waiver and equitable estoppel are affirmative

---

[17] *See also, e.g., K & J Invs., LLC v. Flathead Cty. Bd. of Cty. Commr's*, 2020 MT 277, ¶ 10, 402 Mont. 33, 476 P.3d 20 (in re Mont. Const. art. VII, § 4(2), and statutory property tax appeals process).

22

equitable defenses to enforcement of an asserted right, duty, or other legal requirement or restriction. *Booth v. Argenbright*, 225 Mont. 272, 279, 731 P.2d 1318, 1322 (1987) (estoppel is an affirmative defense); *E.F. Matelich Const. Co. v. Goodfellow Bros.*, 217 Mont. 29, 33, 702 P.2d 967, 969 (1985) (waiver is an affirmative defense); *Shimsky v. Valley Credit Union*, 208 Mont. 186, 190, 676 P.2d 1308, 1310 (1984) ("defenses of estoppel, waiver[,] and laches" are remedies that are "equitable [in] nature and invoke the . . . equity power" of the court); *Maloney v. Nw. Masonic Aid Ass'n*, 8 A.D. 575, 580 (N.Y. App. Div. 1896) (waiver and estoppel are equitable defenses).[18]  However, as essential, non-waivable requirements for court adjudication of a case or controversy, subject matter jurisdiction and justiciability are threshold jurisdictional issues which may not be defeated

---

[18] Implied waiver and equitable estoppel are related equitable doctrines. *Reiter v. Yellowstone Cty.*, 192 Mont. 194, 202, 627 P.2d 845, 850 (1981). "Waiver is a voluntary and intentional relinquishment of a known right or claim" by "express declaration[]" or implication. *Olsen v. Milner*, 2012 MT 88, ¶ 31, 364 Mont. 523, 276 P.3d 934 (internal citations omitted). An implied waiver requires proof of conduct "inconsistent with" the subject right or claim that clearly manifests or is tantamount to a voluntary and intentional relinquishment of a known right or claim. *Olsen*, ¶ 31. "[W]aiver [may not] be inferred 'from doubtful or ambiguous factors.'" *McLain v. Kent Sch. Dist. No. 415*, 314 P.3d 435, 441 (Wash. Ct. App. 2013) ("[w]aiver is an equitable doctrine that can defeat a legal right where the facts show that the party relinquished a known right" by contract or implication from conduct—internal citation omitted). In contrast, the doctrine of equitable estoppel "operates to [preclude] a party from unconscionably taking advantage of a wrong while asserting a strict legal right," thus requiring "clear and convincing" proof: (1) of "conduct, acts, language, or silence" tantamount "to a representation or concealment of material facts"; (2) of the subject's actual or circumstantially imputed knowledge of those facts "at the time of the representation or concealment"; (3) that "the truth concerning the[] [subject] facts" was "unknown to the other party" at the time; (4) that the subject engaged in the subject conducts, acts, language, or silence "with the intention or expectation" that the other party would or likely would act thereon; and (5) that the other party relied and "in fact act[ed] upon the conduct to that party's detriment. *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 30, 323 Mont. 453, 100 P.3d 987 (internal citations omitted). *See also, e.g.*, *Reiter*, 192 Mont. at 202, 627 P.2d at 850 (equitable estoppel requires proof of "detrimental reliance" on conduct of another manifesting intent to relinquish or forego the subject right).

23

by assertion of equitable remedies or defenses. *See Mountain Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶¶ 17-18, 400 Mont. 484, 469 P.3d 136 (equitable principles or remedies "generally may not defeat, contradict, or ameliorate specific rights affirmatively provided by statute" "absent a clear indication of contrary legislative intent or acquiescence"—internal citations omitted); *Gottlob*, ¶ 7 (subject matter jurisdiction may be raised at any time by the court or a party—internal citations omitted); *Hilands*, ¶¶ 16 and 21 (justiciability subject to challenge at any time—internal citations omitted); *Whalen*, ¶ 40 (justiciability is a "threshold requirement to a court's adjudication of a dispute"); *Miller*, 259 Mont. at 426-27, 856 P.2d at 1380 (subject matter jurisdiction is subject to challenge "at any stage of a judicial proceeding by a party or *sua sponte* by the court"); *Barber*, 78 F.3d at 1422 (court "may consider . . . justiciability at any time" as "a prudential aspect of the [constitutional] 'case and controversy' prerequisite" for exercise of subject matter jurisdiction). Consequently, North Star's asserted implied waiver and equitable estoppel defenses could not in any event have defeated the threshold procedural justiciability requirement for exhaustion of administrative remedies specified by § 2-4-702(1)(a), MCA. While the District Court inexplicably failed to address those equitable estoppel defenses as asserted in North Star's amended complaint and opposition to the PSC's motion to dismiss, we may "affirm the district court when it reaches the right result, even if . . . for the wrong reason." *Talbot v. WMK-Davis, LLC*, 2016 MT 247, ¶ 6, 385 Mont. 109, 380 P.3d 823. We therefore hold that the District Court's failure to consider North Star's asserted waiver and equitable estoppel defenses was not reversible error under the circumstances of this case.

24

**CONCLUSION**

¶26    For the foregoing reasons, we hold that the District Court correctly dismissed North Star's amended petition for judicial review of the subject 2020 PSC rate determination decision due to failure to exhaust all administrative remedies as required by § 2-4-702(1)(a), MCA, and Admin. R. M. 38.2.4806(6).  We affirm.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE