FILED

12/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0145

DA 23-0145

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 302

CITY OF GREAT FALLS,

Petitioner and Appellant,

v.

INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS, Local #8, MONTANA
FEDERATION OF PUBLIC EMPLOYEES, and
CITY OF GREAT FALLS CRAFT COUNCIL,

Respondents and Appellees.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV-20-612
Honorable Kaydee Snipes Ruiz, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jordan Y. Crosby, James R. Zadick, Ugrin Alexander Zadick, P.C., Great
Falls, Montana

David G. Dennis, Great Falls City Attorney, Great Falls, Montana

For Appellees:

Jonathan C. McDonald, McDonald Law Office, PLLC, Helena, Montana

Submitted on Briefs:  October 11, 2023

Decided:  December 10, 2024

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 The City of Great Falls (City) appeals the May 2022 judgment of the Montana Eighth Judicial District Court, Cascade County, dismissing its petition for judicial review of the October 2020 proposed, and ultimately final, agency decision and order of the Montana Board of Personnel Appeals (MBPA) in favor of the International Association of Firefighters Local #8, and other public employee labor unions, regarding their respective unfair labor practices complaints. We address the following restated issue:

> *Whether the District Court erroneously concluded that the October 2020 MBPA hearing examiner's decision was not eligible for judicial review under §§ 2-4-701 or -702(1)(a), MCA?*

Affirmed.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Prior to 2019, the City collectively bargained with employee labor unions regarding workplace drug and alcohol use and testing policies. Pre-2019 city policy, applicable to all union and non-union employees, prohibited employee use of alcohol or drugs on city premises or while performing city business, provided for temporary investigative suspension upon particularized suspicion of unfitness for duty due to drug or alcohol use, subjected employees to drug or alcohol screening or professional medical evaluation in such case, and subjected employees to discipline for drug and alcohol policy violations. Under the pre-2019 policy, employees in positions that required a commercial driver's license (CDL) as a condition of employment, others in positions involving performance of

narrowly-defined "safety-sensitive" functions, and any involved in on the job vehicle/injury accidents were also subject to random drug and alcohol testing on demand.

¶3  In 2019, by posted and individual written notice to all employees, including union and non-union employees, the City unilaterally announced and then imposed a revised drug and alcohol policy upon all employees. *Inter alia*, the revised 2019 policy expanded the scope of employees subject to random drug and alcohol testing, beyond the previously limited scope of CDL-required and narrowly-defined "safety-sensitive" positions, to further include city lifeguards and any city employee who drove a city vehicle, operated certain equipment, or supervised or transported minors. *Inter alia*, the revised 2019 policy further:

(1)  subjected all employees to termination of employment on first-offense violation of the policy, whether use, testing, or other policy provision;

(2)  subjected all employees to payroll deduction of testing costs on a corresponding per-employee basis; and

(3)  required all employees to consent to the terms of the policy by signing all "required forms" including an "Awareness and Acknowledgment Form" and a "Consent" to random urine or blood-alcohol breath testing on demand.

Relying on its asserted non-negotiable management authority, the City made no attempt to obtain the advance negotiated/bargained-for consent of the affected unions (hereinafter Collective Bargaining Units or CBUs)[1] to the new drug and alcohol policy provisions, and

---

[1] The affected CBUs that filed the unfair labor practice complaints at issue were the International Association of Firefighters Local #8, Montana Federation of Public Employees, and the City of Great Falls Crafts Council (including Carpenters Union Local No. 82, Teamsters Local Union No. 2, Operating Engineers Local No. 400, Laborers Union Local No. 1685, and Machinists Union Local No. 24).

then similarly ignored or denied subsequent CBU demands for collective bargaining regarding the matter.

¶4 In and after February 2019, the affected CBUs began filing CBU-specific MBPA unfair labor practice complaints pursuant to §§ 39-31-103(12), -201, -202, -305(1)-(2), -401(5), -403, -405, and -406, MCA (Montana Public Employees Collective Bargaining Act (MPECBA)). In common essence, the complaints alleged that the City's unilateral imposition of the revised 2019 drug and alcohol policy without collective bargaining, and imposition of the policy by direct communication with individual CBU members rather than through their respective union exclusive representatives, were unfair labor practices in violation of §§ 39-31-103(4), (12), -201, -305, -401(1), and (5), MCA. Citing § 39-31-303, MCA (CBUs and their exclusive representatives "shall recognize" public employer "prerogatives . . . to operate and manage" all employer "affairs in" various enumerated "areas," *inter alia*), and its self-government charter powers and responsibilities, the City asserted in response that it lawfully acted unilaterally within the scope of its non-negotiable management authority.

¶5 In June 2019, MBPA consolidated and transferred the unfair labor practice complaints for contested case administrative hearing and adjudication pursuant to §§ 39-31-405(3)-(5) and -406, MCA (MPECBA unfair labor practice complaint procedure); § 39-31-105, MCA (all MBPA "hearings and appeals must" proceed "in accordance with" applicable "provisions of the Montana Administrative Procedure Act" (MAPA)); and §§ 2-4-101(2)(b), -102(4), and -601 through -623, MCA (MAPA "contested

4

case" proceeding procedure). Following discovery and unsuccessful mediation, the affected CBUs and the City filed cross-motions for summary judgment based on stipulated material facts.

¶6 On October 22, 2020, the assigned agency hearing examiner issued a detailed proposed contested case agency decision, including referenced stipulated material facts and resulting conclusions and applications of law, granting summary judgment to the CBUs, and thus denying the City's cross-motion. In pertinent essence, based on the stipulated material facts, the hearing examiner concluded as matters of law that:

(1)     the new or expanded 2019 drug and alcohol policy provisions unilaterally imposed by the City on CBU members were unlawful mid-contract alterations of employment terms or conditions in violation of MPECBA collective bargaining requirements;[2]

(2)     the City's associated direct communication with individual CBU members regarding the imposition of those new or expanded policy provisions violated the City's MPECBA duty to collectively bargain regarding such matters through the designated exclusive CBU representatives;[3] and

(3)     the City's unilateral imposition of the new or expanded drug and alcohol policy provisions, and associated failure to communicate and negotiate those matters with the CBU members through their designated exclusive representatives, thus constituted "unfair labor practices" as defined in §§ 39-31-103(12) and -401, MCA, and cited guiding federal judicial and administrative authority interpreting similar provisions of the federal National Labor Relations Act (NLRA), and Labor Management Relations Act (LMRA).[4]

_____

[2] *See* §§ 39-31-103(1), (5)-(6), -201, -305(1)-(2), and -401(1), MCA.

[3] *See* §§ 39-31-103(1), (4)-(6), -201, -305(1)-(2), and -401(5), MCA.

[4] Based on the substantial "similarity between" MPECBA §§ 39-31-101 through -409, MCA, and similar provisions of the federal NLRA, Pub. L. No. 198, 49 Stat. 449 (1935), and amending LMRA, Pub. L. No. 101, 61 Stat. 136 (1947), as amended, pertinent interpretive decisions of the National Labor Relations Board and federal judiciary under those federal Acts guide the

5

In accordance with § 39-31-406(6), MCA, the hearing examiner's proposed agency decision was accompanied by a separate recommended MBPA order compelling the City, *inter alia*, to cease and desist from all "direct efforts to impose" its revised drug and alcohol policy provisions on the subject CBU memberships, any enforcement "effort[s]" against those memberships, and any further "direct dealing with members" of the subject CBUs. Also in accordance with § 39-31-406(6), MCA, the hearing examiner's proposed agency/MBPA decision and recommended order were served on the parties by U.S. mail on October 22, 2020. On receipt, the City documents were stamped "received" on October 26, 2020.

¶7 The City did not avail itself of its procedural right under §§ 39-31-406(6), 2-4-621(1)-(3), and -623(1), MCA, to file and brief "exceptions" of "fact or law" to the proposed decision and order for final MBPA review in advance of issuance of a final agency/MBPA order. On November 20, 2020, the City instead petitioned for district court judicial review pursuant to § 2-4-701, MCA (immediate judicial review of "preliminary" or "intermediate agency . . . ruling" if ordinary "review of the final agency decision" under

_____

interpretation and application of similar provisions of the MPECBA. *Bonner School Dist. No. 14 v. Bonner Educ. Ass'n*, 2008 MT 9, ¶ 18, 341 Mont. 97, 176 P.3d 262; *City of Great Falls v. Young*, 211 Mont. 13, 17, 686 P.2d 185, 187 (1984); *State ex rel. Bd. of Personnel Appeals v. Mont. Eleventh Jud. Dist. Ct.*, 183 Mont. 223, 226, 598 P.2d 1117, 1118-19 (1979). As pertinent to the federal authority relied on by the hearing examiner, the NLRA, and amending LMRA, specify various prohibited "unfair labor practices" by labor unions and affected employers, and provide an administrative and judicial scheme for protection of employer and union interests regarding the collective bargaining process and resulting agreements in interstate commerce. *See* 29 U.S.C. §§ 141-42, 151-53, and 157-60.

§ 2-4-702(1)(a), MCA, "would not provide an adequate remedy"). Aside from overboard recitation of the applicable MAPA standard of judicial review,[5] the more particular ground for relief asserted in the petition was that the hearing examiner's proposed decision erroneously failed to:

> recognize the significance of the City's statutorily-mandated obligations regarding [the] prevent[ion] [of] workplace drug and alcohol use by public employees in safety sensitive positions.[6]

In its supporting brief, the City elaborated that the hearing examiner "disregarded the City's cited legal authority," and instead relied on "inapplicable" and "distinguishable" decisional law to reach "entirely misguided" legal conclusions, thus resulting in erroneous ultimate conclusions that the alleged "unfair labor practices occurred." Directed to the MAPA prerequisite for immediate judicial review of a preliminary agency decision under

---

[5] The petition broadly asserted that the hearing examiner's proposed agency decision on summary judgment "violat[ed] constitutional or statutory provisions . . . under . . . § 2-4-704(2)(a)(i) and (iv)," MCA, thereby cursorily mirroring the MAPA standard of judicial review. *See* § 2-4-704(2)(a)(i) and (iv), MCA (reviewing court "may reverse or modify" the subject administrative "decision if . . . the administrative findings, inferences, conclusions, or decisions are . . . in *violation* of *constitutional or statutory provisions* . . . [*or*] affected by *other error of law*"—emphasis added).

[6] In support of that assertion, the petition cited: (1) the authority and duty of the city manager under the City's self-government charter to "[d]irect, . . . supervise, and administer all City departments" and "employees"; (2) the city manager's resulting function as the city "director of public safety" and thus "the executive head of police and fire" as referenced in § 7-3-4464(1), MCA; (3) the powers and duty of the public safety director under § 7-32-103(1), MCA, to "perform the duties conferred on and required of . . . [city] police officers[] and chiefs of police"; and (4) the City's alleged duty under 41 U.S.C. § 8102, as a condition of federal funding, "to ensure a Drug-Free Workplace" by requiring "as a condition of employment" in "safety-sensitive" positions that such employees "refrain from possessing[] or using controlled substances or illegal drugs, including . . . marijuana, in the workplace."

7

§ 2-4-701, MCA (ordinary "review of the final agency decision" under § 2-4-702(1)(a), MCA, "would not provide an adequate remedy"), the petition:

    (1)    cited *Shoemaker v. Denke*, 2004 MT 11, ¶ 20, 319 Mont. 238, 84 P.3d 4, for the asserted proposition that exhaustion of available administrative remedies as required by § 2-4-702(1)(a), MCA, is not required for assertions of error involving pure questions of law; and

    (2)    therefore asserted that waiting for ordinary review of a final agency decision under § 2-4-702(1)(a), MCA, would not provide an "adequate remedy" for the City's assertions of error because the petition sought "review of legal issues [only which] involve[] a judicial determination," and thus "[h]aving" final agency review by "a non-judicial board would not remedy" the asserted errors of law, "violate public policy as set forth in statute," "delay [City] implementation of proactive public safety measures," and "not be in the interests of judicial economy."

In response, the CBUs asserted that § 2-4-701, MCA, did not apply because the hearing examiner's decision became the final agency decision by default operation of law pursuant to § 39-31-406(6), MCA. Citing *Flowers v. Bd. of Personnel Appeals*, 2020 MT 150, ¶ 8, 400 Mont. 238, 465 P.3d 210, the CBUs further asserted that *Shoemaker* and cited underpinnings were clearly distinguishable, and thus insufficient to override or circumvent the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, as applied to the concurrently provided remedy for final agency review of hearing examiner proposed findings of fact *and conclusions and applications of law* specified in §§ 39-31-406(6), 2-4-621(1)-(3), and -623(1), MCA.[7] Upon subsequent briefing and oral

---

[7] The CBUs initially asserted that the District Court "lack[ed] jurisdiction" due to the City's failure to exhaust administrative remedies. We need not address that threshold jurisdictional matter in light of our recent clarification in *North Star Dev.*, which the parties acknowledge on appeal, that "failure to exhaust administrative remedies as required by § 2-4-702(1)(a), MCA, does not deprive a district court of . . . subject matter jurisdiction," but is merely a justiciability prerequisite that

argument, the District Court "denied and dismissed" the City's petition for "failure to exhaust" the final agency review remedy provided by §§ 39-31-406(6) and 2-4-621(1), MCA. The City timely appealed.

**STANDARD OF REVIEW**

¶8 Whether a petition for judicial review of a contested case agency decision satisfies the threshold procedural requirements of §§ 2-4-701 or -702(1)(a), MCA, is generally a threshold question of law subject to de novo review for whether the district court correctly interpreted and applied the pertinent law. *See North Star Dev., LLC v. Mont. Pub. Serv. Comm'n*, 2022 MT 103, ¶¶ 11-20, 408 Mont. 498, 510 P.3d 1232; *Qwest Corp. v. Mont. Dep't of Pub. Serv. Regulation*, 2007 MT 350, ¶¶ 27-33, 340 Mont. 309, 174 P.3d 496; *Wilson v. Dep't of Pub. Serv. Regulation*, 260 Mont. 167, 171-72, 858 P.2d 368, 371 (1993). The standard of review is ultimately the same whether characterized as a pure question of law on review of a district court ruling under M. R. Civ. P. 12(b)(6) or 56, or otherwise as a mixed question of fact and law ultimately subject to de novo review for correctness. *See* §§ 2-4-701 and -702(1)(a), MCA; *North Star Dev.*, ¶¶ 11-20.[8] Contested case administrative conclusions and applications of law are subject to de novo review for correctness. *Ruby Mt. Trust v. Dep't of Revenue*, 2000 MT 166, ¶ 13, 300 Mont. 297,

"precludes *exercise* of" the court's jurisdiction regarding this particular subject matter. *See North Star Dev., LLC v. Mont. Pub. Serv. Comm'n*, 2022 MT 103, ¶ 23, 408 Mont. 498, 510 P.3d 1232.
[8] In the rare case where a predicate material fact was in dispute below, the resulting district court finding of predicate fact is subject to deferential review only for clear error. *O'Neill v. Dep't of Revenue*, 2002 MT 130, ¶ 10, 310 Mont. 148, 49 P.3d 43 (district courts review contested case administrative findings of fact only for clear error—"we employ the same standards when reviewing a district court order affirming or reversing an administrative decision").

3 P.3d 654 (citing *Steer, Inc. v. Dep't of Revenue*, 245 Mont. 470, 474-75, 803 P.2d 601, 603 (1990)).

## DISCUSSION

¶9 *Whether the District Court erroneously concluded that the October 2020 MBPA hearing examiner's decision was not eligible for judicial review under §§ 2-4-701 or -702(1)(a), MCA?*

¶10 MPECBA vests public employees with expressly protected "right[s] of self-organization" and to "bargain collectively through" their chosen representatives regarding "wages, hours, fringe benefits, and other conditions of employment." Section 39-31-201, MCA. Public employers and MBPA-recognized labor unions (i.e., public employee "labor organizations" as defined by § 39-31-103(6), MCA)[9] accordingly have the "authority" and "duty to bargain collectively . . . in good faith" through their respective "exclusive representative[s]" regarding "wages, hours, fringe benefits, and other conditions of employment." Section 39-31-305(1)-(2), MCA. Within that framework, public employee unions and memberships must "recognize the prerogatives of public employers to operate and manage their affairs" in order to "maintain the efficiency of government operations," *inter alia*. Section 39-31-303(4)-(5), MCA. However, no MPECBA provision "compel[s]" public employee unions or employers "to agree to" any particular collective bargaining "proposal" or "concession." Section 39-31-305(2), MCA.

    1. MPECBA/MAPA Process for Contested Case Administrative Adjudication of Unfair Labor Practice Complaints.

---

[9] *See* Title 39, ch. 31, part 2, MCA (MBPA process for certification of public employee constituted "labor organizations").

¶11 In accordance with generally applicable MAPA "contested case" procedures, MPECBA provides a structured procedural scheme and requirements for formal MBPA adjudication of "unfair labor practice" complaints. *See* §§ 39-31-103(12), -105, -401, -402, -405, -406, 2-4-102(4), -601, -611, -612, and -621, MCA. Upon preliminary investigation and finding of "probable merit" on an unfair labor practice complaint, MBPA must set and notice a formal "contested case" adjudicatory hearing before a designated board member or hearing examiner. *See* §§ 39-31-405(1), (3), (5), -406(1)-(3), -105, 2-4-102(4), -601, -611, and -612, MCA. When, as here, MBPA refers an unfair labor practice complaint to a hearing examiner, he or she must conduct a contested case hearing, and then timely issue a proposed agency/MBPA decision regarding the complaint. *See* §§ 39-31-406(4)-(5) and 2-4-621(1)-(2), MCA. If the hearing examiner's proposed decision ultimately finds and concludes that a party "has engaged" or "is engaging in an unfair labor practice," the proposed decision must include a "statement of the reasons for the decision, and of each [supporting] issue of *fact or law* necessary to the proposed decision." Sections 39-31-406(4) and 2-4-621(1)-(2), MCA (emphasis added). In such event, the hearing examiner must include with the proposed decision a recommended MBPA order

> requiring the [perpetrator] to cease and desist from the unfair labor practice and to take affirmative action, including reinstatement of employees . . . ,[10] that will effectuate [MPECBA] policies . . . [and which]

---

[10] However, the "order . . . may not require the reinstatement of an individual as an employee who has been suspended or discharged[,] or the payment to the employee of any backpay[,] if it is found that the individual was suspended or discharged for cause." Section 39-31-406(4), MCA.

11

> may further require the [perpetrator] to make reports . . . showing the extent to which the [perpetrator] has complied with the order.

Section 39-31-406(4) and (6), MCA.[11] The hearing examiner must then "file[]" the proposed agency/MBPA decision and recommended order "with the board" and "cause" them "to be served on the parties." Section 39-31-406(4) and (6), MCA.[12]

¶12 Upon receipt of service of the hearing examiner's proposed agency/MBPA decision and recommended order, the parties have the procedural right to final agency review of the proposed decision, underlying findings of fact and conclusions of law, and recommended order upon timely-filed "exceptions" to the proposed decision and order for final agency review prior to issuance of the final agency decision. *See* §§ 2-4-621(1)-(3), 39-31-105, and -406(6), MCA.[13] However, "if exceptions are not filed within 20 days after service of the proposed decision and recommended order," "or within a further period that the board may authorize," then the proposed decision and "recommended order become[]" the final "order of the board" by default operation of law. Section 39-31-406(6), MCA.[14]

---

[11] If the proposed agency/MBPA decision finds and concludes that the subject of the complaint has not "engaged in or is [not] engaging in the [alleged] unfair labor practice," then it shall include the supporting "findings of fact," and be issued with a recommended agency/MBPA "order dismissing the complaint." Section 39-31-406(5)-(6), MCA.

[12] *See similarly* § 2-4-621(1), MCA.

[13] The "exceptions" remedy for final agency review also includes the accompanying procedural rights to file supporting "briefs" and for "oral argument" thereon. Section § 2-4-621(1), MCA. *See also* § 39-31-406(6), MCA (timing of final MBPA unfair labor practice decision relative to briefing).

[14] *Accord N. Plains Res. Council v. Nat. Res. & Conservation Bd.*, 181 Mont. 500, 518, 594 P.2d 297, 307 (1979) (agency order/decision "final for purposes of judicial review when it imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative

¶13 When party "exceptions" are timely filed under § 39-31-406(6), MCA, there is no final agency decision until MBPA issues a "final" written decision and order, upon "separately stated" supporting "findings of fact" and "conclusions of law," in accordance with § 2-4-623, MCA. Sections 39-31-105, -406(6), 2-4-621(1)-(3), and -623, MCA.[15] Upon consideration of the hearing examiner's proposed agency/MBPA decision and recommended order, timely-filed party "exceptions," and supporting factual and legal arguments filed pursuant to §§ 39-31-406(6) and 2-4-621(1), MCA, MBPA may either "adopt" the hearing examiner's "proposed decision" and "recommended order" as its "final" agency decision and "order" or, as pertinent here, "reject or modify" the hearing examiner's proposed "*conclusions of law* and *interpretation of administrative rules*." Sections 39-31-406(6), -105, 2-4-621(1), and (3) MCA (emphasis added).[16] Thus, both the

---

process"—internal punctuation and citation omitted). The more specific MPECBA provision for default conversion of the hearing examiner's proposed decision, and recommended order, to the final agency/MBPA order by operation of law varies from the generally applicable MAPA procedure insofar that MAPA includes no similar default provision. *See* § 39-31-406(6), MCA; *compare* §§ 2-4-621(1), (3), and -623, MCA. Even when no party exceptions are timely filed, MAPA generally requires the agency "officials . . . who are to render the final decision" to affirmatively act on the proposed decision, whether by blanket adoption as the final agency decision, or upon rejection or modification of the hearing examiner's proposed conclusions of law, interpretation of administrative rules, or findings of fact under the applicable standard of final agency review. *See* §§ 2-4-621(1), (3), and -623, MCA. To the extent of the procedural variance between the default provision of § 39-31-406(6), MCA, and the generally applicable provisions of §§ 2-4-621(1), (3), and -623, MCA, the more specific MPECBA default provision applies and governs. *See* § 39-31-105, MCA (MPECBA "hearings and appeals must be in accordance with the *appropriate* [MAPA] provisions"—emphasis added); §§ 1-2-101 and -102, MCA (related statutory provisions must generally be construed to give effect to all, but more "particular" provision controls over a "general" provision).

[15] *See also N. Plains Res.*, 181 Mont. at 518, 594 P.2d at 307.

[16] Upon "review of the complete record," the agency may similarly "reject or modify" the hearing examiner's proposed "findings of fact" upon determination that the findings were not supported

generally applicable MAPA contested case procedure, and conforming MPECBA unfair labor practice complaint procedure, expressly contemplate and authorize final agency review for correctness of a hearing examiner's proposed conclusions and applications of law without limitation.

    2.  City's Petition for Judicial Review of October 2020 MBPA Hearing Examiner Decision re Subject MPECBA Unfair Labor Practice Complaints.

¶14    The process provided by MPECBA for administrative adjudication of unfair labor practice complaints is a MAPA "contested case" agency proceeding. *See* §§ 2-4-102(2)(a), (4), and 39-31-405 through -407, MCA. Under MAPA, direct judicial review of a contested case agency decision is generally available only upon "exhaust[ion]" of "all administrative remedies available within the agency" and issuance of the agency's "final written decision." Section 2-4-702(1)(a), MCA; *Wilson*, 260 Mont. at 172, 858 P.2d at 371; *In re Mont. Power Co.*, 180 Mont. 385, 389, 590 P.2d 1140, 1143 (1979). *See also* §§ 2-4-101(2)(c), -102(2)(a), and (4), MCA ("agency" and "contested case" definitions and pertinent MAPA purpose statement). As a narrow exception to the general rule, however, a "preliminary, procedural, or intermediate" contested case "agency action or ruling" is subject to "immediate[]" judicial review upon demonstration that ordinary "review of the final agency decision" under § 2-4-702(1)(a), MCA, "would not provide an adequate

---

by "substantial" record "evidence," or "the proceedings on which the findings were based did not comply with essential *requirements of law*." Sections 39-31-105, 2-4-621(1), and (3), MCA (emphasis added).

14

remedy" regarding the assertion(s) of error at issue. *See* §§ 2-4-102(4), -701, and -702(1)(a), MCA.

¶15 Here, the City alternatively asserted below that judicial review of the hearing examiner's proposed conclusions and applications of law, and resulting recommended order, were subject to judicial review either as a preliminary ruling or decision under § 2-4-701, MCA, or as a final agency/MBPA decision under § 2-4-702(1)(a), MCA. The District Court accordingly addressed both of those alternative assertions. As the City correctly recognizes on appeal, however, the hearing examiner's proposed agency/MBPA decision and recommended order became a final agency decision and order by default operation of law pursuant to § 39-31-406(6), MCA, upon the City's conscious choice to forego the administrative "exceptions" and final agency review remedy available under §§ 39-31-406(6), 2-4-621(1)-(3), and -623(1), MCA.[17] The District Court thus correctly concluded as a matter of law that the hearing examiner's October 2020 proposed

---

[17] While the City's conscious tactical choice is independently evident in its petition and briefing below, the City further succinctly acknowledges on appeal that:

> The City did not desire the *non-judicial* review [by MBPA of the hearing examiner's] legal conclusions . . . such as would have occurred through the filing of exceptions . . . under § 39-31-406(6), MCA, [because the] sole [issue in the case was a] *legal* question [arising from the] dispositive cross motions for summary judgment. . . . [Since] the resulting Hearing Officer's Order only considered a legal question, specifically the application of competing persuasive authority to [the pertinent MPECBA] statutes, the City chose to petition the District Court for immediate *judicial* review of the . . . purely legal conclusions . . . [under] the administrative exhaustion doctrine [exception] *for purely legal questions* . . . [recognized in] *Shoemaker v. Denke*, 2004 MT 11, ¶ 20, 319 Mont. 238, 244, 84 P.3d 4, 8.

(Emphasis original.)

15

agency/MBPA decision and recommended order were in any event *not* "preliminary, procedural, or intermediate agency action[s] or ruling[s]" as referenced in § 2-4-701, MCA. We must thus consider whether the District Court correctly concluded that the October 2020 hearing examiner's decision and order was not eligible for judicial review under § 2-4-702(1)(a), MCA, due to the City's failure to exhaust the administrative "exceptions" and final agency review remedy provided by §§ 39-31-406(6), 2-4-621(1)-(3), and -623(1)(a), MCA.

¶16     As a preliminary matter of law, the timely-filing of party "exceptions" "of fact or law" to a hearing examiner's proposed agency/MBPA decision and recommended order in a contested case MPECBA "unfair labor practice" proceeding is an express administrative remedy available for final agency review in advance of issuance of the final agency/MBPA decision and order. *See* §§ 39-31-105, -406(6), 2-4-621(1)-(3), and -623, MCA.  While the City correctly points out that it had no legal duty to timely avail itself of the final agency review remedy, it is equally true as a matter of law that failure to do so effects an unqualified waiver of the right to direct judicial review of the agency decision due to failure to exhaust that express administrative remedy as expressly required by § 2-4-702(1)(a), MCA.  *See* § 2-4-702(1)(a), MCA; *North Star Dev.*, ¶ 13; *Flowers*, ¶ 8; *Shoemaker*, ¶ 18. We thus turn to the City's assertion that *Shoemaker* recognized a sweeping jurisprudential exception to the express exhaustion of administrative remedies requirement of

16

§ 2-4-702(1)(a), MCA, regarding the concurrently provided final agency review remedy specified in §§ 39-31-406(6), 2-4-621(1)-(3), and -623(1)(a), MCA.[18]

¶17 As a preliminary matter, the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, "applies equally to the ultimate case decision, constituent or related issues adjudicated therein or thereby, as well as any other related issue that could have been timely raised and adjudicated by the agency pursuant to the

---

[18] Note that our ensuing analysis and holding on this narrow issue neither addresses, nor expressly or implicitly applies to or affects, the distinct question of whether, or to what extent, the exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, may or may not apply to independent claims for declaratory or tort relief *outside* or *without resort to* a MAPA "contested case" proceeding as referenced, for example, in *North Star Dev.*, ¶ 16 (citing *Flowers*, ¶ 15); *Flowers*, ¶ 15 (quoting *Brisendine v. Mont. Dep't of Commerce*, 253 Mont. 361, 366, 833 P.2d 1019, 1022 (1992)); *Brisendine*, 253 Mont. at 366, 833 P.2d at 1022; and *Taylor v. Mont. Dep't of Fish, Wildlife & Parks*, 205 Mont. 85, 89-94, 666 P.2d 1228, 1230-32 (1983) (exhaustion of Human Rights Act contested case agency complaint process not required in advance of independent declaratory judgment/tort claim against state agency based on pure question of law as to whether age-based forced retirement statute violated statutory MHRA age discrimination prohibition and Mont. Const. art. II, § 4 (equal protection)). *See similarly Mitchell v. Town of West Yellowstone*, 235 Mont. 104, 105-07 and 109-10, 765 P.2d 745, 745-48 (1988) (common law exhaustion of remedies doctrine not applicable to independent action for declaratory relief involving pure question of law as to whether municipal land use restriction which included the asserted administrative variance remedy was facially unconstitutional); *Jarussi v. Board of Trustees*, 204 Mont. 131, 134-36, 664 P.2d 316, 317-18 (1983) (common law exhaustion of administrative remedies doctrine not applicable to independent statutory claim for invalidation of school board acts in violation of open meeting law and Mont. Const. art. II, § 9 (right to observe public body deliberations), where invalidation claim independently provided by statute without administrative remedy); *Keller v. Dep't of Revenue*, 182 Mont. 478, 481-84, 597 P.2d 736, 738-40 (1979) (exhaustion of state tax appeal board process for review of accuracy of property tax assessment valuations not required as condition precedent for independent action for declaratory relief regarding pure question of law as to whether state erroneously failed to apply statutory property tax benefit triggered by local taxing entity action to which taxpayers were not parties); *Larson v. State*, 166 Mont. 449, 456-57, 534 P.2d 854, 858 (1975) (exhaustion of county tax appeal board process for review of accuracy of property tax assessment valuations not required as condition precedent to independent action for declaratory relief regarding pure question of law challenge to constitutionality of statewide property tax appraisal methodology).

17

available administrative process." *North Star Dev.*, ¶ 13 (citing *Flowers*, ¶ 8; *Art v. Mont. Dep't of Labor & Indus.*, 2002 MT 327, ¶ 14, 313 Mont. 197, 60 P.3d 958; *Marble v. Mont. Dep't of Health & Human Servs.*, 2000 MT 240, ¶¶ 27-29, 301 Mont. 373, 9 P.3d 617— internal punctuation omitted). The "manifest purpose" of the exhaustion requirement of § 2-4-702(1)(a), MCA, is to afford the agency involved in a contested case MAPA proceeding "an opportunity to correct its own errors before a court interferes" in the administrative adjudication process. *North Star Dev.*, ¶ 13 (citing *Bitterroot River Prot. Ass'n v. Bitterroot Conservation Dist.*, 2002 MT 66, ¶ 22, 309 Mont. 207, 45 P.3d 24— punctuation omitted). As implicated by an applicable assertion of error at issue in a particular case, we have often more narrowly stated that the exhaustion of administrative remedies requirement allows an agency "to make a factual record" and "correct its own errors within its specific expertise." *E.g.*, *Flowers*, ¶ 8 (citing *Bitterroot River*, ¶ 22); *Kenck v. State Child Support Enf. Div.*, 2013 MT 380, ¶ 28, 373 Mont. 168, 315 P.3d 957; *Shoemaker*, ¶ 18; *City of Billings Police Dep't v. Owen*, 2006 MT 16, ¶ 26, 331 Mont. 10, 127 P.3d 1044 (citing *Shoemaker*, ¶ 18); *Grabow v. Mont. High School Ass'n*, 2002 MT 242, ¶ 35, 312 Mont. 92, 59 P.3d 14; *Bitterroot River*, ¶ 22.

¶18 However, affording an agency the opportunity to correct its own errors *within its specific area of administrative expertise* is not the only purpose of the exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA. In the context of a MAPA contested case proceeding, requiring exhaustion of administrative remedies also furthers both the interests of "judicial economy," by relieving congestion and stress on the

overburdened judicial system, and the interest of agency "efficiency" in the attendant performance of legislatively-assigned legal duties and functions. *Bitterroot River*, ¶ 22. *Accord Grabow*, ¶ 35 (citing *Bitterroot River*). In that regard, the existence, function, and duty of administrative agencies are generally matters of legislative provision under executive branch direction. *See* Mont. Const. art. VI, §§ 1 and 7; Title 2, ch. 15, MCA. Without interference with the ultimate constitutional power and authority of the judiciary to interpret the meaning and proper application of law, and to review executive and legislative action for constitutional conformance,[19] the Legislature, in the exercise of its exclusive constitutional authority, has provided for a wide-ranging comprehensive scheme of administrative regulation which includes, *inter alia*, administrative adjudication of contested case agency proceedings subject to "direct" judicial "review." *See* Mont. Const. arts. III, § 1; V, § 1; and VII, § 4(2) (separation of powers, legislative power, and specific power to "provide for direct" district court "review" of "administrative agenc[y]" "decisions"); Title 2, ch. 4, MCA (MAPA). *See also, e.g.*, §§ 39-31-401 through -406, MCA (MPECBA contested case unfair labor practice complaint procedure). MAPA "implement[s]" the Legislature's constitutional authority under Mont. Const. art. VII, § 4(2), by providing for such "direct" judicial "review" of contested case agency decisions in § 2-4-702(1)(a), MCA, but only upon prior "exhaust[ion]" of "all administrative remedies available within the agency." *North Star Dev.*, ¶ 23 (quoting § 2-4-702(1)(a),

---

[19] *See* Mont. Const. arts. III, § 1, and VII, §§ 2(1) and (4)(1).

19

MCA, and citing *Hilands Golf Club v. Ashmore*, 2002 MT 8, ¶¶ 18 and 21, 308 Mont. 111, 39 P.3d 697 (recognizing that district court "jurisdiction to review administrative decisions is statutorily created" and that § 2-4-702(1)(b), MCA, is "a limitation on the district court's jurisdiction to review administrative decisions . . . in contrast to" the broad subject matter jurisdiction provided by Mont. Const. art. VII, § 4)).[20]  As "an express procedural prerequisite" for direct judicial review of contested case agency decisions under §§ 2-4-702 through -704, MCA, the exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, is a threshold "procedural justiciability" requirement "for *exercise* of [that] district court subject matter jurisdiction." *North Star Dev.*, ¶ 23.  *Accord Flowers*, ¶ 8; *Shoemaker*, ¶ 18.  It thus follows that the final agency review remedy generally provided by MAPA in § 2-4-621(1)-(2), MCA, and similar agency-specific contested case remedies such as § 39-31-406(6), MCA, for final agency review of a hearing examiner's proposed contested case decision, is an "administrative remed[y] available within the agency" as referenced in § 2-4-702(1)(a), MCA.  *See* §§ 2-4-621(1)-(3), -623(1), and -702(1)(a), MCA.  *See similarly*, *e.g.*, §§ 39-31-406(6) and -105, MCA.

¶19   The expressly authorized scope of the MAPA final agency review remedy, and similar agency-specific remedies provided in conjunction therewith, includes final agency review for correctness of a hearing examiner's proposed decision *and* its supporting

---

[20] *See also*, *e.g.*, *K & J Invs., LLC v. Flathead Cnty. Bd. of Cnty. Commr's*, 2020 MT 277, ¶ 11, 402 Mont. 33, 476 P.3d 20 (in re Mont. Const. art. VII, § 4(2), and statutory property tax appeals process).

*conclusions and applications of law.* *See* §§ 2-4-621(1)-(3), -623(1)(a), and -702(1)(a), MCA (proposed hearing examiner "decision must contain a statement of the reasons for the decision and of each issue of *fact or law* necessary to the proposed decision"; agency may then "adopt" proposed decision or *inter alia* "reject or modify" the proposed "*conclusions of law* and *interpretation of administrative rules*"; and the "final" agency decision must then include supporting "findings of fact *and conclusions of law*"—emphasis added). *See similarly* §§ 39-31-406(6) and -105, MCA (MBPA-specified final agency review remedy in conjunction with MAPA remedy).

¶20    Consequently, any consideration of the existence or scope of a jurisprudential pure question of law exception to the MPECBA/MAPA final agency review remedy provided in conjunction with the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, must necessarily flow from, comport with, and be constrained by the limits of our pertinent judicial power and role regarding those clear and unambiguous legislative enactments.  Certainly, this Court and our subordinate district courts have exclusive power and authority in justiciable cases to determine the meaning and proper application of constitutional and statutory law, and to review legislative and executive acts for conformance with applicable constitutional provisions.  *See* Mont. Const. arts. III, § 1, and VII, §§ 1, (2)(a), and (4)(1); *Larson v. State*, 2019 MT 28, ¶ 42, 394 Mont. 167, 434 P.3d 241; *Best v. City of Billings Police Dep't*, 2000 MT 97, ¶ 16, 299 Mont. 247, 999 P.2d 334; *State v. Finley*, 276 Mont. 126, 134-35, 915 P.2d 208, 214 (1996), *overruled in part on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817;

21

*General Agric. Corp. v. Moore*, 166 Mont. 510, 515-16, 534 P.2d 859, 862-63 (1975) (discussing "supremacy of constitutional mandates" and that no governmental function "can be discharged in disregard of" or "beyond" constitutional "limitations"—citation omitted); *Marbury v. Madison*, 5 U.S. 137, 167 and 177-79, 2 L. Ed. 60, 70 and 71-75 (1803) ("[i]t is emphatically the province and duty" of the judicial branch to determine "what the law is," "interpret" its meaning, determine how it applies in "particular cases," and, in the case of constitutional apportionment of government power, review whether government acts or enactments comport and "conform[]" with applicable constitutional provisions). It is further beyond cavil that legislative enactments are the primary source of non-organic law in this state, and thus control over any decisional common law to the extent of any conflict. *See* Mont. Const. arts. III, § 1, and V, § 1; §§ 1-1-102, -105, -107 through -109, and 1-3-103, MCA. Moreover, as necessary to the adjudication of justiciable cases, courts must interpret and apply legislative enactments within constitutional bounds to effect, and in accordance with, the discernible legislative intent. Sections 1-2-101 through -103 and -106, MCA.

¶21 Against that backdrop, *Shoemaker* involved a Montana Human Rights Commission (HRC) contested case proceeding regarding a city employee's retaliation claim against a city council member (Shoemaker), and separate entity claim against the subject city, alleging retaliation against her regarding her previously-settled sexual harassment complaint against the city mayor. *Shoemaker*, ¶¶ 4-5 and 10. Upon hearing, the assigned administrative hearing examiner issued detailed findings of fact and conclusions of law in

22

support of a proposed agency/HRC decision adjudicating Shoemaker liable for the claimant's retaliation-caused emotional distress damages, and further recommending an injunction enjoining him from further similar conduct. *Shoemaker*, ¶ 10. The proposed agency decision ruled in favor of the city, however, on the entity retaliation claim. *Shoemaker*, ¶ 10. The claimant filed a corresponding "appeal" for final agency review of the proposed ruling in favor of the city, and then Shoemaker subsequent filed a "notice of cross-appeal." *Shoemaker*, ¶ 11.[21] Due to the staggered filing of the "appeal" and "cross-appeal" for final agency review, HRC set separate correspondingly staggered briefing schedules for each. *Shoemaker*, ¶ 11. In his response brief in opposition to the claimant's appeal, Shoemaker disputed her assertions of error, and then, instead of filing a separate brief in support of his cross-appeal as ordered by HRC, separately included in his response brief to the claimant's appeal his "constitutional [cross-appeal] claim" asserting that the hearing examiner's proposed HRC ruling against him "violated" his federal and state constitutional "right to freedom of expression." *Shoemaker*, ¶¶ 11-12. However, HRC subsequently dismissed Shoemaker's cross-appeal due to failure to timely file a supporting cross-appeal brief as ordered, and then did not address the affirmative

---

[21] While not express in our analysis absent underlying statutory citation, the "appeal" and "cross-appeal" process referenced in *Shoemaker* as an available administrative remedy for final HRC review of the disputed hearing examiner's proposed findings of fact and conclusions of law obviously referred to the MAPA "exceptions" remedy for final agency review provided in §§ 2-4-621(1)-(3) and -623(1)(a), MCA, or similar MHRA-specific remedy. *See Shoemaker*, ¶¶ 10-12, 19, and 30; *compare* §§ 2-4-621(1)-(3) and -623(1)(a), MCA. The MAPA remedy for final agency review requires timely-filed "exceptions" of "fact or law" to the hearing examiner's proposed decision, however, not a mere notice of appeal or cross-appeal. *See* §§ 2-4-621(1)-(3) and -623(1)(a), MCA.

23

constitutional claim raised in his brief in opposition to the claimant's appeal. *Shoemaker*, ¶ 12. After HRC subsequently issued a final agency decision that simply adopted the hearing examiner's proposed decision, Shoemaker petitioned for judicial review pursuant to § 2-4-702(1)(a), MCA, on two alternative grounds—the HRC-adopted hearing examiner "findings and conclusions" of law "were clearly erroneous," but if not, nonetheless violated his federal and state constitutional "right to freedom of expression." *Shoemaker*, ¶¶ 12-13.

¶22 In response, the claimant moved for dismissal of Shoemaker's petition due to failure to exhaust his available administrative remedy for final agency review of the hearing examiner's proposed decision. *Shoemaker*, ¶ 13. As pertinent here, Shoemaker countered that "his petition for judicial review was exempt from the exhaustion rule" of § 2-4-702(1)(a), MCA, "because it is the duty of the courts, not administrative agencies, to decide constitutional questions." *Shoemaker*, ¶ 13. The district court granted the motion and dismissed the petition due to failure to exhaust administrative remedies. *Shoemaker*, ¶ 14.

¶23 On appeal, Shoemaker asserted that the district court erroneously dismissed his petition for judicial review because it "presented a purely legal, constitutional question for the court to decide," and was thus exempt from the exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA. *Shoemaker*, ¶ 17. We responded with the preliminary sweeping statement that "Montana recognizes an exception to the exhaustion doctrine when a purely legal issue is at the center of the dispute." *Shoemaker*, ¶ 20 (citing *Keller v. Dep't of Revenue*, 182 Mont. 478, 481-84, 597 P.2d 736, 738-40 (1979), and

24

*Taylor v. Mont. Dep't of Fish, Wildlife & Parks*, 205 Mont. 85, 89-94, 666 P.2d 1228, 1230-32 (1983)). We immediately clarified, however, that our cited precedent had, in the aggregate, recognized a more limited exception to the exhaustion doctrine narrowly applicable only when the matter at issue involves a pure question of *constitutional* law, *not accompanied by* an issue regarding a fact-based determination within the pertinent jurisdiction of the agency to decide. *See Shoemaker*, ¶¶ 20-23 (citing *Mitchell v. Town of West Yellowstone*, 235 Mont. 104, 105-07 and 109-10, 765 P.2d 745, 745-48 (1988); *Jarussi v. Board of Trustees*, 204 Mont. 131, 134-36, 664 P.2d 316, 317-18 (1983); *Larson v. State*, 166 Mont. 449, 456-57, 534 P.2d 854, 858 (1975); and *Belknap Realty Co. v. Simineo*, 67 Mont. 359, 215 P. 659 (1923)). Noting that Shoemaker's asserted constitutional issue was not only accompanied by, but also dependent upon, his other concurrent assertions of error regarding the correctness of the hearing examiner's proposed adverse decision, we held that his petition for judicial review under § 2-4-702(1)(a), MCA, "did not qualify" for the asserted pure question of constitutional law "exception to the exhaustion doctrine." *Shoemaker*, ¶¶ 25-26. In affirming the district court denial of his petition for judicial review due to failure to exhaust his final agency review remedy as expressly required by § 2-4-702(1)(a), MCA, we further held that he was thus:

> *required* to exhaust available administrative remedies through the HRC appeals process, and *to argue* both his factual issue and his *constitutional issue* before the [HRC].

*Shoemaker*, ¶¶ 25-29, 31, and 33.

¶24 For several reasons, *Shoemaker* is problematic as support for either a sweeping pure question of law exception, or a more narrow pure question of constitutional law exception, to the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA. First, contrary to the City's assertion, we unequivocally clarified that the exception to the exhaustion of administrative remedies doctrine discussed in *Shoemaker* narrowly applied only to pure questions of *constitutional* law not accompanied by an issue regarding a fact-based determination within the subject matter jurisdiction of the involved agency. *See Shoemaker*, ¶¶ 20-23 (citing and discussing *Mitchell*, *Jarussi*, *Larson*, and *Belknap*). Consequently, even if we assumed *arguendo* that the pure question of constitutional law exception ultimately discussed, but not applied, in *Shoemaker* applied to the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, the City's petition would not have qualified for judicial review under such an exception here because the assertion of error raised in the City's petition and supporting brief did not involve a pure question of constitutional law, only a question of statutory interpretation as to the meaning or scope of the City's pertinent management "prerogatives" under MPECBA, and the scope of the MPECBA "unfair labor practice" term, under pertinent guiding federal authority.

¶25 Second, contrary to our overbroad statement in *Shoemaker*, ¶ 19, the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, is not merely "the statutory embodiment of the [common law] exhaustion doctrine." Neither our statement to that effect in *Shoemaker*, ¶ 19, nor our ensuing *Shoemaker* analysis based on

26

*Belknap*, *Larson*, *Keller*, *Taylor*, *Jarussi*, and *Mitchell*, even referenced, much less accounted for, the broad scope of final agency review of a hearing examiner's proposed conclusions and applications of law as expressly authorized in §§ 2-4-621(1)-(3) and -623(1), MCA, or similar agency-specific contested case remedy. *See Shoemaker*, ¶¶ 19-24.

¶26 Third, none of the cases cited in support of the exhaustion doctrine exception(s) discussed in *Shoemaker* involved, much less analyzed, the express final agency review remedy provided by §§ 2-4-621(1)-(3) and -623(1), MCA, or similar agency-specific contested case remedy, as a condition precedent to direct judicial review of a proposed contested case final agency decision under § 2-4-702(1)(a), MCA. *See Mitchell*, 235 Mont. at 105-07 and 109-10, 765 P.2d at 745-48 (common law exhaustion of remedies doctrine not applicable to independent action for declaratory relief involving pure question of law as to whether municipal land use restriction which included the asserted administrative variance remedy was facially unconstitutional); *Jarussi*, 204 Mont. at 134-36, 664 P.2d at 317-18 (common law exhaustion of administrative remedies doctrine not applicable to independent statutory claim for invalidation of school board acts in violation of open meeting law and Mont. Const. art. II, § 9 (right to observe public body deliberations) where invalidation claim was independently provided by statute without administrative remedy); *Taylor*, 205 Mont. at 89-94, 666 P.2d at 1230-32 (exhaustion of Human Rights Act contested case agency complaint process not required in advance of independent declaratory judgment/tort claim against state agency based on pure question of law as to

27

whether age-based forced retirement statute violated statutory MHRA age discrimination prohibition and Mont. Const. art. II, § 4 (equal protection)); *Keller*, 182 Mont. at 481-84, 597 P.2d at 738-40 (exhaustion of state tax appeal board process for review of accuracy of property tax assessment valuations not required as condition precedent for independent action for declaratory relief regarding pure question of law as to whether state erroneously failed to apply a statutory property tax benefit based on triggering local taxing entity action to which taxpayers were not parties); *Larson*, 166 Mont. at 456-57, 534 P.2d at 858 (exhaustion of county tax appeal board process for review of accuracy of property tax assessment valuations not required as condition precedent to independent action for declaratory relief regarding pure question of law as to constitutionality of statewide property tax appraisal methodology); *Belknap*, 67 Mont. at 360-65, 215 P. at 660-62 (exhaustion of statutory county and state boards of equalization processes for review of accuracy of property tax assessment valuations required as a condition precedent to judicial action for recovery of overpaid taxes resulting from erroneous valuation assessment). Thus, none of the cited underpinnings of the pure question of constitutional law exception to the exhaustion doctrine discussed in *Shoemaker* involved or discussed such a jurisprudential exception to the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, as applicable to the concurrently provided contested case final agency review remedy specified in §§ 2-4-621(1)-(3) and -623(1)(a), MCA.

¶27 Fourth, unlike here, *Shoemaker* did not consider the more fundamental question of whether a pure question of constitutional law exception to the express exhaustion of

28

administrative remedies requirement of § 2-4-702(1)(a), MCA, would comport or be consistent with the broad scope of final agency review of proposed agency conclusions and applications of law as expressly authorized by §§ 2-4-621(1)-(3) and -623(1), MCA, or related agency-specific remedy provided in conjunction therewith. *See Shoemaker*, ¶¶ 17-29 and 31. While our analysis *assumed* the existence of the uncontested jurisprudential exception discussed, but not ultimately applied, in *Shoemaker*, the narrow disputed issue on appeal was whether Shoemaker's asserted constitutional issue qualified for exemption from the express exhaustion requirement of § 2-4-702(1)(a), MCA, under that assumed exception. *See Shoemaker*, ¶¶ 17-29 and 31. Thus, on close examination, *Shoemaker* does not support recognition of either a sweeping pure question of law, or narrower pure question of constitutional law, jurisprudential exception to the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, as applicable to the concurrently-provided final agency review remedy specified in §§ 2-4-621(1)-(3) and -623(1), MCA, or related agency-specific remedy provided in conjunction therewith.

¶28 On critical examination under the foregoing analysis here, however, a sweeping jurisprudential pure question of law, or narrower pure question of constitutional law, exception to § 2-4-702(1)(a), MCA, would irreconcilably conflict with the authorized scope of the final agency review remedy expressly provided by §§ 2-4-621(1)-(3) and -623(1), MCA (*inter alia* providing for party "exceptions" of "fact or law" and final agency review of hearing examiner's *proposed conclusions and applications of law* in MAPA contested case proceedings). As manifest in our holding in *Shoemaker*, ¶¶ 25-26

29

(concluding that aggrieved party was "*required* to exhaust available" final agency review remedy and thus "*argue* both his factual issue and his *constitutional issue* before the [HRC]"—emphasis added), final agency review of a hearing examiner's proposed conclusions and applications of law, including implicated questions of constitutional law, as expressly authorized in §§ 2-4-621(1)-(3) and -623(1), MCA, and/or similar agency-specific remedy provided in conjunction therewith, does not in any way usurp or infringe upon the exclusive constitutional power of the judiciary to determine, interpret, or apply applicable statutory or constitutional law where, as here, the Legislature has provided that any such proposed or final agency conclusion or application of law in a contested case proceeding is subject to direct judicial review under § 2-4-702(1)(a), MCA, and the facial constitutionality of the administrative scheme is not at issue. Any contrary holding or recognition of such a jurisprudential exception in this narrow MAPA contested case context would contradict, nullify, and defeat the contested case administrative scheme clearly and unambiguously provided by the Legislature in §§ 2-4-621(1)-(3), -623(1), and -702(1)(a), MCA (MAPA final agency review remedy concurrently provided in conjunction with express exhaustion of administrative remedies requirement), and any similar agency-specific final review remedy provided in conjunction therewith.

¶29 We hold that the express contested case exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, as applicable to the "exceptions" and final agency review remedy provided in §§ 2-4-621(1)-(3) and -623(1), MCA, and similar MPECBA-specific remedy provided in § 39-31-406(6), MCA, in conjunction therewith,

30

are not subject to a pure question of law, or pure question of constitutional law, jurisprudential exception as assumed but not applied in *Shoemaker*. To the extent inconsistent with our narrow holding and analysis here, *Shoemaker*, ¶¶ 13-30, and our similar inconsistent dicta in *North Star Dev*., ¶ 16 (citing *Shoemaker* and *Taylor*, *supra*), are hereby prospectively repudiated and superseded.

¶30   To be clear, *Shoemaker*, *Mitchell*, *Jarussi*, *Taylor*, *Keller*, *Larson*, and *Belknap* were, as distinguished herein, exhaustion of administrative remedies doctrine applications correctly decided at bottom in context of the distinct issues and arguments raised on appeal. Except as recognized but not ultimately applied in *Shoemaker*, a "pure question of constitutional law" exception remains and has been properly applied in those distinct procedural contexts which neither involved nor implicated the MAPA contested case exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, *as applied to* the MAPA contested case final agency review remedy, and related MPECBA-specific remedy, at issue here. We also recognize that § 2-4-702(1)(b), MCA, is a MAPA provision authorizing "[a] party who proceeds before an agency under the terms of a particular statute" to question the validity of that statute on judicial review without having raised the question before the agency, *after* having first raised "any other" contested case "question" before the agency absent a showing of "good cause." In and to that narrow MAPA context and extent, § 2-4-702(1)(b), MCA, essentially embodies a narrow pure question of constitutional law exception to the exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA. Again, however, the exhaustion doctrine exception embodied in

31

§ 2-4-702(1)(b), MCA, is neither at issue nor implicated here in the manifest absence of a facial constitutional challenge to the validity of the administrative procedure for MPECBA unfair labor practice complaints, or the MAPA contested case exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA, *as applied to* the MPECBA/MAPA final agency review remedy. Nor was the § 2-4-702(1)(b), MCA, exception at issue in *Shoemaker* where the asserted pure question of constitutional law was, in essence, an as-applied constitutional challenge to the hearing examiner's proposed final agency decision, rather than a facial challenge to the validity of either the pertinent administrative procedure specified by the Montana Human Rights Act, or the exhaustion of remedies requirement of § 2-4-702(1)(a), MCA, as applied to the HRC/MAPA final agency review remedy. Our narrow holding and analysis here thus neither applies, nor affects, the narrow MAPA contested case exception embodied in § 2-4-702(1)(b), MCA, or the statutory or common law exhaustion of administrative remedies doctrine applications in *Mitchell*, *Jarussi*, *Taylor*, *Keller*, *Larson*, and *Belknap*. With that clarification, we hold that the District Court correctly denied and dismissed the City's petition for judicial review of the October 2020 MBPA hearing examiner decision and order due to failure to exhaust the contested case final agency review remedy provided by §§ 39-31-406(6), 2-4-621(1)-(3), and -623(1), MCA, as required by the express exhaustion of administrative remedies requirement of § 2-4-702(1)(a), MCA.

## CONCLUSION

¶31 We hold that the District Court correctly concluded that the hearing examiner's October 2020 proposed agency/MBPA decision and order was not eligible for judicial review as a preliminary order under § 2-4-701, MCA. We hold further that the District Court also correctly concluded that the resulting October 2020 final agency/MBPA decision and order was not eligible for judicial review under § 2-4-702(1)(a), MCA, due to the City's failure to exhaust the "exceptions" and final agency review remedy available under §§ 39-31-406(6), 2-4-621(1)-(3), and -623(1)(a), MCA. The District Court's 2022 order and judgment denying the City's petition for judicial review of the October 2020 MBPA hearing examiner decision and order is therefore AFFIRMED.

/S/ DIRK M. SANDEFUR

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON